Clifton W. Albright – CA Bar No. 100020
clifton.albright@ayslaw.com
Lucien A. Schmit – CA Bar No. 116151
lucien.schmit@ayslaw.com
Anthony J. Bejarano – CA Bar No. 223345
anthony.bejarano@ayslaw.com
**ALBRIGHT, YEE & SCHMIT, LLP**
888 West 6th Street, 14th Floor
Los Angeles, California 90017
Phone:  (213) 833-1700
Fax:  (213) 833-1710

Attorneys for Defendant
CITY OF LOS ANGELES

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE LOS ANGELES POLICE PROTECTIVE LEAGUE ("LAPPL"), et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>THE CITY OF LOS ANGELES, and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO. CV 06-6390 VBF (MANx)<br><br>**DEFENDANT CITY OF LOS ANGELES'S MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**<br><br>Date:          October 18, 2010<br>Time:          1:30 p.m.<br>Courtroom:          9<br><br>Discovery Cut-off:          6/30/09<br>Final Pre-Trial Conf.:          2/14/11<br>Trial:          3/01/11 |

# **TABLE OF CONTENTS**

1
2
3

**PAGE**

4   1.   <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u> ........................1

5   2.   <u>FACTUAL SUMMARY</u> ...........................................................................3

6   3.   <u>ARGUMENT</u> ........................................................................................7

7        A.   Donning & Doffing LAPD Uniforms is not Compensable ............7

8        B.   The Disputed Activities Associated with Donning & Doffing

9             are not Compensable ...................................................................15

10       C.   Activities Covered by the Uniform, Maintenance and

11            Equipment Allowance are not Compensable.................................15

12       D.   Disputed Activities Concerning War Bag Contents, Such as

13            Helmets, Batons, First Responder's Kits and Hazardous

14            Materials Gear are not Compensable.............................................17

15       E.   Disputed Activities Concerning Cleaning, Checking and

16            Oiling of Service Weapons are not Compensable .........................19

17       F.   The City is not Liable for Disputed Activities Covered by

18            Premium Pay Credits under §207(h) .............................................20

19       G.   Plaintiffs are not entitled to Injunctive Relief...............................23

20       H.   Plaintiffs are not entitled to Declaratory Relief...........................23

21  4.   <u>CONCLUSION</u> .......................................................................................24

22
23
24
25
26
27
28

ii

**DEFENDANT CITY OF LOS ANGELES'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL
SUMMARY JUDGMENT**

1

# TABLE OF AUTHORITIES

2

<u>**CASES**</u>                                                                                          <u>**PAGE**</u>

3

4

***<u>Abbe v. City of San Diego</u>***

5

    2007 WL 4146696 (S.D. Cal. 2007) ....................................................9, 10

6

***<u>Andersen v. Mt. Clemens Pottery Co.</u>***

7

    328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946) ...............................18

8

***<u>Alexander v. United States</u>***

9

    32 F.3d 1571 (Fed Cir. 1994) ...................................................................21

10

***<u>Apperson v. Exxon Corporation</u>***

11

    1979 WL 1979 (E.D. Cal. 1979) ................................................................9

12

***<u>Alvarez v. IBP, Inc.</u>***

13

    339 F.3d 894 (9th Cir. 2003)..........................................................9, 13, 14

14

***<u>Ballaris v. Wacker Siltronic Corporation</u>***

15

    370 F.3d 901 (9th Cir. 2004) .....................................................................9

16

***<u>Bamonte v. City of Mesa</u>*** (District Court Decision)

17

    2008 WL 1746168 (D. Ariz. 2008),

18

    *Aff'd* 598 F.3d 1217 (9th Cir. 2010).........................................................9

19

***<u>Bamonte v. City of Mesa</u>*** (Appellate Opinion)

20

    598 F.3d 1217 (9th Cir. 2010).......................1, 8, 9, 10, 11, 12, 13, 14, 24

21

***<u>Biggs v. Joshua Hendy Corp.</u>***

22

    183 F.2d 515 (9th Cir. 1950)....................................................................21

23

***<u>Dade County, Florida v. Alvarez</u>***

24

    124 F.3d 1380 (11th Cir. 1997).........................................................20, 25

25

***<u>Dager v. City of Phoenix</u>*** (District Court Decision)

26

    2009 WL 531864 (D. Ariz. 2009)

27

    *Aff'd* 2010 WL 2170992 (9th Cir. 2010)..................................................9

28

iii

***Dager v. City of Phoenix*** (Appellate Opinion)

    2010 WL 2170992 (9th Cir. 2010)..........................................11, 13, 14, 24

***Englewood Lending Inc. v. G & G Coachella Investments, LLC***

    651 F.Supp.2d 1141 (C.D. Cal. 2009)........................................................23

***Forrester v. Roth's I. G. A. Foodliner, Inc.***

    646 F.2d 413 (9th Cir. 1981)....................................................................18

***Hesseltine v. Goodyear Tire & Rubber Co.***

    391 F.Supp.2d 509 (E.D. Tex. 2005) ........................................................21

***IBP, Inc. v. Alvarez***

    546 U.S. 21, 126 S.Ct. 514, 163 L.Ed.2d 288 (2005) ..............................19

***Lindow v. United States***

    738 F.2d 1057 (9th Cir. 1984)........................................18, 19, 20, 24, 25

***Maciel v. City of Los Angeles***

    569 F.Supp.2d 1038 (C.D. Cal. 2008)..........................................16, 17, 24

***Martin v. City of Richmond***

    504 F.Supp.2d 766 (N.D. Cal. 2007) ...........................................................9

***Nolan v. City of Los Angeles*** (CV 03-02190 GAF ), ***Matta v. City of Los Angeles*** (CV 07-06782 GAF ), ***Alaniz v. City of Los Angeles*** (CV 07-06782 GAF)

    2009 Order, Exhibit 60 to Appendix..........................................16, 17, 24

***Nolan v. City of Los Angeles*** (CV 03-02190 GAF ), ***Matta v. City of Los Angeles*** (CV 07-06782 GAF ), ***Alaniz v. City of Los Angeles*** (CV 07-06782 GAF)

    2010 Order, Exhibit 68 to Appendix................................12, 13, 14, 16, 24

***Powell v. State of Florida***

    132 F.3d 677 (11th Cir. 1998)..................................................................23

***Reed v. County of Orange***

    2010 WL 2342394 (C.D Cal. 2010).......................................12, 13, 14, 24

***Solenoid Devices, Inc. v. Ledex, Inc.***

    375 F.2d 444 (9th Cir. 1967)....................................................................23

**DEFENDANT CITY OF LOS ANGELES'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

1

***Steiner v. Mitchell***

2      350 U.S. 247, 76 S.Ct. 330, 100 L.Ed. 267 (1956) ...............................8, 9

3    ***Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 12***

4      312 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949 (1944) ....................................7

5    ***Vallerand, et al. v. County of Los Angeles, et al.***

6      CV 08-5057 DMG (Exhibit 67 to Appendix) ........................13, 14, 15, 24

7

8    **STATUTES AND OTHER AUTHORITIES**

9

10   United States Code

11   29 U.S.C. §§216 et seq. ...............................................................1, 3, 25

12   29 U.S.C. §§207 et seq.. ...................................................1, 2, 4, 20, 21, 25

13   29 U.S.C. §254(a)(2) .........................................................................7, 8

14   29 U.S.C. §2201.................................................................................23

15

16   Code of Federal Regulations

17   29 CFR §778.315............................................................................21

18   29 CFR §778.317............................................................................21

19   29 CFR §778.322............................................................................21

20   29 CFR §790.8(c) ............................................................................8

21

22   U.S. Department of Labor Wage and Hour Memorandum

23   2006-2     ......................................................................................8, 9

24

25

26

27

28

**DEFENDANT CITY OF LOS ANGELES'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL
SUMMARY JUDGMENT**

1. **INTRODUCTION AND SUMMARY OF ARGUMENT**

Five "named" plaintiffs, joined by over 2000 "opt-in" plaintiffs bring this collective action comprised of three claims for relief under 29 U.S.C §216(b), part of the Fair Labor Standards Act or "FLSA". They are present or former officers in Defendant City of Los Angeles's Police Department ("LAPD") who worked patrol or traffic assignments during the statutorily allowed recovery period. Plaintiffs' first claim alleges that the FLSA requires compensation for "*time incurred both prior to and following designated paid shift times during which [Plaintiffs] don, doff, prepare, or otherwise care for special protective gear required by the City for the work performed for [LAPD]*" (Complaint 8:8-11)[1] (collectively "Disputed Activities"); that the City willfully violated the FLSA's maximum hours provision (§207)[2] by not compensating them for the Disputed Activities; and that they are entitled to monetary compensation at straight time and overtime rates, liquidated (double) damages, and attorney fees. Plaintiffs' second claim is for declaratory relief establishing the compensability of the Disputed Activities; and their third claim is for an injunction mandating that the City compensate Plaintiffs for the Disputed Activities.

The City here moves for summary judgment or for partial summary judgment on nine subsidiary issues. The controlling decision in ***Bamonte v. City of Mesa***, 598 F.3d 1217 (9th Cir. 2010) establishes that where, as here, peace officers may don & doff their uniforms at home if they so choose, the activity is not integral and indispensable to their principal activities, and therefore not compensable under the FLSA. Uniform donning & doffing, and associated tasks

---

1       According to Plaintiffs, "*special protective gear*" includes the required LAPD uniform (Complaint ¶14, c)

2       Statutory references are to Title 29, United States Code unless otherwise specified.

819\06\MSJ-Brief.pld

**DEFENDANT CITY OF LOS ANGELES'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

1   that are either part of the donning & doffing process or preliminary or
2   postliminary to it (the bulk of the Disputed Activities) are thus not compensable
3   (Issues 1 and 2 (for partial summary judgment)). Because the Memoranda of
4   Understanding ("MOUs") between the City and the union ("LAPPL") that
5   represents Plaintiffs' bargaining unit provide Plaintiffs with annual cash stipends
6   of about $1,000 as a Uniform, Maintenance and Equipment Allowance toward the
7   cost of cleaning, maintaining and replacing uniforms and equipment, those
8   Disputed Activities addressing cleaning and maintenance are not compensable on
9   independent grounds (Issue 3), as two sister courts have already found.
10          The rump set of Disputed Activities concern maintenance and inspection of:
11   a) "protective" gear generally kept in Plaintiffs' "War Bags"; and b) their service
12   weapons. These activities are not compensable for a constellation of reasons
13   (Issues 4 and 5). First, they may be undertaken on duty, LAPD has no way of
14   monitoring how much off duty time officers voluntarily choose to spend on such
15   activities, and off duty work without both prior permission and subsequent
16   submission of overtime pay requests is contrary to LAPD policy and the MOUs.
17   Second, many of these activities take so little time, happen so infrequently, or are
18   so difficult to monitor administratively that they are excluded from
19   compensability as *de minimis*. Third, many of these are preliminary or
20   postliminary to Plaintiffs' principal activities, but are not integral and
21   indispensable to them. Finally, any otherwise compensable time spent on these
22   remaining Disputed Activities is too little to overcome the §207(h) credits
23   generated by premium payments required by the MOUs for any Deployment
24   Period in which they actually worked beyond the 171 hours overtime threshold
25   applicable under §207(k), so that the City cannot be found liable to Plaintiffs
26   (Issue 6).
27
28

**DEFENDANT CITY OF LOS ANGELES'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

In sum, or in various combinations, Issues 1 through 6 justify both summary judgment, disposing of this case, and partial summary judgment as to Plaintiffs' first claim (Issue 7). Independently, Plaintiffs' third claim fails because only the Secretary of Labor may obtain injunctive relief under §216 (Issue 8); and Plaintiffs' second claim should also fail because the declaratory relief sought duplicates the monetary relief sought, so that the Court ought to exercise its discretion to dismiss it (Issue 9).

## 2.   FACTUAL SUMMARY

When they start their shifts in Patrol or Traffic assignments as LAPD officers Plaintiffs are required to appear at roll call in uniform, including numerous prescribed uniform components (Defendant's Proposed Uncontroverted Facts "UF" 1-4). At roll call, officers are to be dressed in a neat, clean and professional manner, with their uniforms and gear in clean and serviceable condition, and subject to routine inspections (UF 8, 9). Plaintiffs also carry additional equipment and materials in their War Bags, but these are generally not inspected at roll call (UF 5-7, 40). Other than requirements for carrying identification, the elements of the LAPD uniform are not dictated by law or regulation (outside of department policies) (UF 31). Plaintiffs are allowed to check and restock the contents of their War Bags (some items, like citation books or latex gloves become depleted), and some keep their War Bags in the trunks of their personal vehicles, transferring them to LAPD vehicles when assigned after roll call (UF 41, 42). Once in the field, LAPD officers typically operate on a semi-autonomous basis, using their training, experience, and professional judgment, within department policy and protocols (UF 30).

The terms and conditions of Plaintiffs' employment by the City are governed by the MOUs between the City and the LAPPL – that has been renewed repeatedly during the relevant time (UF 37). Per the MOUs, Plaintiffs work in 28

3

day Deployment Periods ("DPs"), mostly on "3/12" schedules (13 shifts of 12 hours totaling 156 hours per DP) or "4/10" schedules (usually 15 shifts of 10 hours totaling 150 hours per DP, but sometimes 14 or 16 shifts per DP), and are regularly compensated for 160 hours per DP (UF 58-61). The MOUs provide, and this Court has ruled, that the City has adopted the partial overtime exemption provided by §207(k), so that the overtime threshold under the FLSA is 171 hours per DP. Per the MOUs and LAPD policy, Plaintiffs may not work overtime without advance authorization (except in emergencies, etc.), and must submit written requests for overtime compensation (UF 48, 49). The MOUs provide for overtime compensation to officers at time and one half for hours worked in excess of their regular and normal working hours, and for hours worked on holidays or days of rest, including extended shifts and extra shifts within any DP (UF 62, 63). In addition, the MOUs include a Uniform, Maintenance and Equipment Allowance (currently $1,025 annually) to help defray the cost of maintaining, cleaning and replacing uniforms and equipment, and some Plaintiffs use it to have their leather gear professionally maintained & shined (UF 38, 39).

The Disputed Activities that Plaintiffs seek compensation for are pre-shift and post-shift time spent donning, doffing, washing, shining, checking, stocking, preparing, or otherwise caring for: Uniforms; footwear; badges & identifying items; soft body armor; utility belts & components worn on them including handguns, ammunition, batons, mace, and other gear; Ballistic (General Duty) Helmets; First Responder's Kits; gas masks, chemical suits and other protective equipment; and other special protective gear (Complaint ¶14 at 5:10-26). Plaintiffs do not allege that the City has failed or refused to honor overtime requests submitted per policy. By long standing custom and practice, the City does not compensate LAPD officers for pre-shift or post-shift time spent with their uniforms and gear in the donning & doffing process (UF 15).

Plaintiffs contend that the donning & doffing process encompasses all of the Disputed Activities. In response to interrogatories Plaintiffs describe the process of donning their uniforms this way:

> "[E]ach workday Plaintiff arrives at least forty-five (45) minutes prior to the start of briefing and enters the locker room at the assigned station. Plaintiff then begins to care for protective gear, including wiping down such gear, checking the assigned hand gun (oil and lubricate), cleaning the badge and name tag, inspecting the bullet-proof vest, inspection of and care for all components associated with the Sam Browne belt including but not limited to ammunition and the check of ammunition, check of flashlight, baton, and other gear associated with the belt. Plaintiff then undresses and begins to put on special protective gear, including the soft body armor (bullet-proof vest) over the underlying t-shirt and underneath the uniform top. Plaintiff then puts on the Sam Browne belt and all associated components. Plaintiff then puts on protective foot gear after spending the necessary time to polish and buff foot gear to department standards (and subsequent clean-up). Plaintiff then completes donning of all components of the protective gear and uniform, and making sure the uniform is aligned, clean, and presentable. Plaintiff then checks the personal protection kit (PPK) to ensure all components are present and functional" (UF 10).

Some Plaintiffs contend that they perform maintenance tasks on their uniforms and gear post-shift in the doffing process, while others describe doffing as the reverse of the donning process, and some claim that checking required War Bag contents is part of the process as well (UF 10-14).

The LAPD does nothing to monitor officers' donning & doffing of their uniforms and gear, how long it takes them, or how they do it, so long as they pass inspection (UF 28, 29). Although the City provides lockers for the convenience of officers at most, but not all, LAPD facilities, it is not obligated to do so, nor are the officers obligated to use City premises for uniform donning & doffing (UF 16, 27, 33, 34). Officers' work schedules are not constructed around the donning & doffing process (UF 32). Plaintiffs and other officers are allowed to commute to and from work in full uniform, or in partial uniform when no distinctive uniform elements are displayed, but Motor Officers who commute on City-owned motorcycles must do so in full uniform (UF 17, 18, 20). Plaintiffs have the option of donning & doffing on or off of City premises as a matter of their choosing based on personal preference and their choice of location will not subject them to discipline (UF 24, 27). Officers are no less ready to start work, or prepared to work extended shifts, when they arrive for and depart from their work-sites dressed in their uniforms than when they don & doff their uniforms and gear on City premises (UF 35, 36). The actual donning & doffing practices of Patrol and Traffic Officers, including Plaintiffs, vary: some don & doff their uniforms at LAPD facilities, while others do not; some usually, but not always don & doff in a particular location; and Motor Officers generally don & doff at home in order to commute for free on LAPD motorcycles (UF 19, 21-23, 25, 26).

The Disputed Activities include caring for service weapons and items usually carried in Plaintiffs' War Bags. Neither the War Bags themselves nor the First Responder's Kits, PPE, helmets, or batons carried in them, require any more than negligible maintenance (UF 43-47). Plaintiffs are also required to qualify up to five times annually with their service weapons (UF 50). Plaintiffs may generally qualify on duty at LAPD facilities, which also allow for cleaning the weapon on duty; and are paid overtime under the MOUs when required to qualify off duty (UF 50-52). Plaintiffs' service weapons should be cleaned after firing – a

**DEFENDANT CITY OF LOS ANGELES'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

process that need take no more than 30 minutes – and require oiling, which takes no more than 10 minutes per week (UF 53, 54, 56, 57). Officers may also use "Loading Barrels" at LAPD facilities to safely check their weapons' status in about 15 seconds (UF 55).

## 3.   ARGUMENT

### A.   Donning & Doffing LAPD Uniforms is not Compensable

When the law, or the employer's rules, or the nature of the job, require donning & doffing on the employer's premises, then it is compensable. When they do not – so that employees have the option and ability to don & doff at home – it is not compensable. Because the City allows Plaintiffs to don & doff their uniforms at home if they choose, and neither the law nor the nature of police work require donning & doffing of the LAPD uniform on City premises, Plaintiffs are not entitled to compensation for the pre-shift and post-shift time spent on the donning & doffing process.

The FLSA generally requires compensation for "work", defined by case law as "*physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business.*" ***Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123***, 321 U.S. 590, 598, 64 S.Ct. 698, 88 L.Ed. 949 (1944). Amendments to the FLSA in 1947's Portal-to-Portal Act exclude compensation for "*[A]ctivities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities. . .*" (29 U.S.C. §254(a) (2).) Plaintiffs' pre-shift and post-shift donning, doffing and other activities at issue in this case are preliminary and postliminary activities excluded from compensation per §254(a) (2) – but the inquiry does not end there.

In ***Steiner v. Mitchell***, 350 U.S. 247, 76 S.Ct. 330, 100 L.Ed. 267 (1956), the Secretary of Labor sued an automobile battery manufacturer concerning time spent by employees at a battery manufacturing plant changing clothes and showering before and after their regular shifts. The Supreme Court held such activities "*compensable under the portal-to-portal provisions of the Fair Labor Standards Act if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed and are not specifically excluded by Section 4(a) (1).*" (***Id.*** at 256.) Accordingly, the Ninth Circuit uses a three stage inquiry to determine compensability of peace officer donning & doffing activities:

> "*The first stage address[s] whether the activity constituted 'work'; the second stage address[s] whether the activity was an 'integral and indispensable' duty; and the third stage address[s] whether the activity [is] de minimis.*" ***Bamonte v. City of Mesa***, 598 F.3d 1217 at 1224 (9th Cir. 2010).[3]

Here, as in ***Bamonte***, the second stage of that inquiry is fatal to Plaintiffs' claims.

In 1947, the United States Department of Labor ("DOL"), in 29 CFR §790.8(c) and footnote 65 thereto, established the general rule concerning compensability of donning and doffing: it is compensable when employees are required to don & doff on their employer's premises, but not when they may do so elsewhere. Nearly 60 years later the DOL restated the rule in Wage and Hour Memorandum ("WHAM") 2006-2: *"[D]onning and doffing of required gear is within the continuous workday only when the employer or the nature of the job mandates that it take place on the employer's premises. It is our longstanding*

---

3   This formulation implicitly determines that the activities are preliminary or postliminary to principal activities, bringing §254(a) (2) into play, since work is otherwise generally compensable.

819\06\MSJ-Brief.pld

**DEFENDANT CITY OF LOS ANGELES'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

*position that if employees have the option and the ability to change into the required gear at home, changing into that gear is not a principal activity, even when it takes place at the plant. See FOH section 31b13 (dressing at home is not compensable)."* (Exhibit 59 at 3.) These determinations are given "***Skidmore*** deference" (***Bamonte*** at 1223, 1228-1229.) They are persuasive, but not controlling.

This general rule has two aspects: 1) where donning & doffing at the worksite is required, it is compensable; and 2) where off-site donning & doffing is allowed, it is not compensable. The Ninth Circuit adopted the first aspect of the rule in ***Alvarez v. IBP, Inc.*** 339 F.3d 894, 903 (9th Cir. 2003) and ***Ballaris v. Wacker Siltronic Corporation***, 370 F.3d 901, 912 (9th Cir. 2004). It adopted the second aspect of the rule in ***Bamonte***.

Before ***Bamonte***, the majority of District Courts within the Ninth Circuit facing the issue followed the DOL rule, in light of ***Steiner***, ***Alvarez***, and ***Ballaris***, in finding that donning & doffing is not compensable if employees may don & doff their uniforms and gear at home. ***Abbe v. City of San Diego***, 2007 WL 4146696 (S.D. Cal. 2007); ***Bamonte v. City of Mesa***, 2008 WL 1746168 (D. Ariz. 2008) (*Aff'd* 598 F.3d 1217); ***Dager v. City of Phoenix***, 2009 WL 531864 (D. Ariz. 2009) (*Aff'd* 2010 WL 2170992 (9th Cir. 2010); ***Martin v. City of Richmond***, 504 F.Supp.2d 766, at 775 (N.D. Cal. 2007); ***Apperson v. Exxon Corporation***, 1979 WL 1979 (E.D. Cal. 1979).

***Bamonte's*** introductory paragraph endorses the conclusion reached by ***Abbe*** and the majority of District Courts:

"*Because officers had the option of donning and doffing their uniforms and gear at home, the district court determined that these activities were not compensable pursuant to the FLSA and the Portal-*

**DEFENDANT CITY OF LOS ANGELES'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

1  to-Portal Act. *We agree that these activities were not compensable*
2  *pursuant to the FLSA, and affirm the district court's judgment*." (***Id.*** at
3  1219.) [4]

4  The ***Bamonte*** Court concluded (at 1228) "*We are persuaded that the*
5  *district court's analysis in Abbe faithfully applied the precepts set forth in Steiner*
6  *and Alvarez*", quoting ***Abbe's*** holding that "*the relevant inquiry is whether the*
7  *nature of the work requires the donning and doffing process to be done on the*
8  *employer's premises*" (***Ibid.***) After ***Bamonte***, the general rule, long espoused by
9  the DOL, and more briefly by the majority of District Courts, is the general rule in
10 the Ninth Circuit.

11 The appellants in ***Bamonte*** argued that concerns about risks associated with
12 at home dressing drove them to don & doff their uniforms at work – an argument
13 common in the District Court cases arising before ***Bamonte*** – but the Ninth
14 Circuit rejected that argument, as have the courts facing the issue since ***Bamonte***.
15 As the Court framed these contentions:

16 "*The officers also explained that it was preferable to don and doff*
17 *their uniforms and gear at the police station. The explanation*
18 *included the following considerations: (1) the risk of loss or theft of*
19 *uniforms and gear at home; (2) potential access to the gear by family*
20 *members or guests; (3) distractions at home that might interfere with*
21 *the donning process; (4) safety concerns with performing firearm*
22 *checks at home; (5) discomfort associated with wearing the gear*
23 *while commuting; (6) the increased risk of being identified as a police*

24 ─────────────

25 4  The ***Bamonte*** Court unanimously held that uniform donning & doffing was
26 not compensable, but Judge Gould dissented as to protective gear "*I concur in the*
27 *judgment only with respect to the majority's determination that the donning and*
28 *doffing of police uniforms is non-compensable*" (***Id.*** at 1233.)

819\06\MSJ-Brief.pld

─────────────

**DEFENDANT CITY OF LOS ANGELES'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL
SUMMARY JUDGMENT**

1  *officer while off-duty; and (7) potential exposure of family members to*

2  *contaminants and bodily fluids.*" (__*Id.*__ at 1220.)

3  The __*Bamonte*__ Court's rejection of these contentions reasoned:

4  *"[I]n this case, the officers urged a conclusion of compensability*

5  *primarily for reasons that were of sole benefit to the employee (risk of*

6  *loss or theft of uniforms, potential access to gear by family members*

7  *or guests, risk of performing firearm checks at home, discomfort while*

8  *commuting, risk of being identified as officer while off-duty, and risk*

9  *of exposing family members to contaminants and bodily fluids from*

10  *encounters in the line of duty)."* (__*Id.*__ at 1225-1226.)

11  While the municipal defendant in __*Bamonte*__ was a small city with a small

12  police force, cases following it have rejected attempts at distinguishing __*Bamonte*__

13  in the City of Phoenix Arizona, Orange and Los Angeles Counties in California,

14  and the City of Los Angeles. A second panel of the Ninth Circuit followed

15  __*Bamonte*__ in its unpublished decision affirming summary judgment in __*Dager v.*__

16  __*City of Phoenix*__, 2010 WL 2170992 (9th Cir. 2010):

17  *"This appeal is squarely controlled by Bamonte v. City of Mesa, 598*

18  *F.3d 1217 (9th Cir.2010). There, as here, appellants--police officers*

19  *in Mesa, Arizona-argued that time spent donning and doffing*

20  *uniforms and protective gear at the beginning and the end of the*

21  *workday was compensable under the FLSA. Id. at 1219. There, as*

22  *here, the defendant municipality maintained lockers at the stations for*

23  *patrol officers for storage of uniforms and equipment, but did not*

24  *require that the officers change at the work site. Id. at 1220. . . .*

25  *Dager offers no material facts to distinguish this case from Bamonte.*

26  *Accordingly, the district court's summary judgment is affirmed."* (__*Id.*__

27  at *1.)

28

11

**DEFENDANT CITY OF LOS ANGELES'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

In ***Reed v. County of Orange***, 2010 WL 2342394 (C.D. Cal. 2010) Judge Carney reconsidered a prior order denying the parties' cross-motions for summary judgment as to Plaintiffs' claims of compensability of peace officer uniform donning & doffing, and, in light of ***Bamonte***, granted the County's motion for summary judgment. As the Court explained:

> "*To be compensable under the FLSA, the donning and doffing of a uniform must be so integral and indispensable to the employee's principal work activities that it has to be done at work. This is clearly not the case here. The vital law enforcement activities of deputies do not require the deputies to put on and take off their pants, shirts and boots at work. Indeed, numerous deputies don and doff their uniforms at home.*" (***Id.*** at *1.)

As in ***Reed***, Judge Feess' recent decision in ***Nolan***[5] ("2010 ***Nolan*** Order", Exhibit 68) reconsidered a prior ruling concerning compensability of peace officer uniform donning & doffing. But in ***Nolan*** the Court had initially granted partial summary judgment to Plaintiffs on this point, while denying the City's cross-motion, only to reverse the result in light of ***Bamonte*** and ***Reed***; and in ***Nolan*** the Court dealt with the LAPD. The Court tersely explained its rationale in the introductory portion of its decision:

> "*Circuit law teaches that a law, rule, or regulation must require police officers to don and doff their uniform at work to satisfy the integral and indispensable requirement and thus support claims for donning and doffing. Here, the evidence clearly shows that LAPD officers have the option and the ability to don and doff their uniform*

---

5   ***Nolan v. City of Los Angeles*** (CV 03-02190 GAF), ***Alaniz v. City of Los Angeles*** (CV 04-08592 GAF), ***Mata v. City of Los Angeles*** (CV 07-06782 GAF) ("***Nolan***" or "***Nolan*** cases")

12

**DEFENDANT CITY OF LOS ANGELES'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL
SUMMARY JUDGMENT**

1  *away from work. There is no dispute that at least some police officers*
2  *dress at home, and Plaintiffs have failed to present any evidence*
3  *demonstrating that officers face negative consequences if they don*
4  *and doff off-site.*
5  *"In short, donning and doffing the police uniform is not an integral*
6  *and indispensable part of an officer's principal work, and therefore*
7  *not compensable work activity under the FLSA."* (**_Id._** at 2:13-22.)

8  More recently, in an August 6, 2010 order, Judge Gee granted partial
9  summary judgment on the donning & doffing issue in **_Vallerand, et al. v. County_**
10 **_of Los Angeles, et al.,_** Case No. CV 08-5057 DMG (VBKx) (Exhibit 67, 10:22-
11 18:3), a case brought by Los Angeles County Sheriff's Deputies and police
12 officers.

13  The City of Los Angeles does not require Plaintiffs to don & doff at work,
14 nor does the law, or the nature of police work, which is the same as in Mesa
15 (**_Bamonte_**), Phoenix (**_Dager_**), Orange County (**_Reed_**), Los Angeles County
16 (**_Vallerand_**) and for the LAPD plaintiffs in **_Nolan_**. Accordingly, uniform donning
17 & doffing activities at issue here are not compensable under the general rule of the
18 DOL and the Ninth Circuit.

19  Further, there is no reason to depart from that general rule here. The
20 **_Bamonte_** Court nominally did not make this general rule an iron-clad one. Instead,
21 it looked to the specific factual context of the case before it, and considered that
22 context in light of the particular facts that it fixed on in **_Alvarez_**, reasoning:

23  *"[W]e look to Alvarez to glean the principles we should apply while*
24  *working toward resolution of this case. In Alvarez, we focused on the*
25  *particular circumstances presented by that case.... See Alvarez, 339*
26  *F.3d at 897, see also id. at 902 (agreeing with the district court under*
27  *the facts presented by this case.). Those particular circumstances*
28  *included the facts that: (1) the meat packing industry has been one of*

13

**DEFENDANT CITY OF LOS ANGELES'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

*the most regulated businesses in the United States [,] id. at 898; (2) all employees were required to don a sanitary outer garment that [was] provided and washed each night ... id. n. 2; (3) the employer restructured its shift time to include four minutes of so-called clothes time ... id. at 899; (4) [o]nce a shift [began], the ... plant employees' time [was] strictly regulated and monitored, id.; (5) the employer's donning and doffing rules were mandatory, id.; and (6) the rules fulfill[ed] mutual obligations of employer and employee. Id. at 901".*

**_Bamonte v. City of Mesa_**, 598 F.3d 1217, 1224 (9th Cir. 2010).

In comparison with the **_Alvarez_** factors: 1) LAPD is not heavily regulated at either the state or federal level, and in particular, no such regulations govern any uniform components or items of protective gear used by police officers (UF 31); 2) LAPD neither provides uniforms, nor washes them nightly, but provides officers with an allowance for purchase and maintenance of uniforms and equipment (UF 38); 3) LAPD has neither structured, nor re-structured shift time with respect to donning & doffing (UF 32); 4) once their shifts begin, LAPD officers work in small units with a large degree of professionalism, discretion and initiative required for semi-autonomous problem solving activities (UF 30); 5) LAPD has no rules for how to don & doff, but does require certain uniform components (UF 3-5, 28,); and 6) on-site officer donning & doffing does not fulfill mutual obligations of employer and employee (UF 27, 33). None of the **_Alvarez_** factors are present here.

As in **_Bamonte, Dager_**, **_Reed_**, **_Vallerand_**, and **_Nolan_**, the facts of this case justify no departure from the general rule that uniform donning & doffing is not compensable under the FLSA and the Portal Act where the employees may don & doff their uniforms off of their employer's premises. Accordingly, this Court should rule that, as a matter of law, Plaintiff's donning & doffing time is not compensable. This justifies partial summary judgment on Issue 1.

**B.     The Disputed Activities Associated with Donning & Doffing are not Compensable**

The conclusion that uniform donning & doffing are not compensable leads to the conclusion that Disputed Activities associated with donning & doffing are not compensable either. First, Plaintiffs have repeatedly admitted (argued, actually) that such tasks (e.g., attaching and removing buttons, badges, & nametags, shining or polishing leather items, checking items on the equipment belt) are part of the donning & doffing "process" (UF 10-14). Second, these activities are preliminary or postliminary to actually putting on or taking off uniform components and equipment, and may just as readily be done at home or at work, to suit the officers' convenience. Since the donning & doffing activities that they facilitate are not compensable, neither are these pre-donning or post-doffing activities.[6] The Court should thus grant partial summary judgment on Issue 2.

**C.     Activities Covered by the Uniform, Maintenance and Equipment Allowance are not Compensable**

Even if tasks associated with donning & doffing could otherwise be compensable, sister courts have held that the Uniform, Maintenance and Equipment Allowance negotiated between the City and the LAPPL bars compensability. LAPD does not require Plaintiffs to spend any pre-shift or post-shift time personally cleaning or maintaining uniforms and equipment. Instead,

---

6     All disputed activities ruled non-compensable in ***Vallerand*** were similar to those alleged here (compare ***Vallerand*** First Amended Complaint (Exhibit 69) at ¶17 with ¶14 of the Complaint here).

15

**DEFENDANT CITY OF LOS ANGELES'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

1   officers receive a collectively bargained-for allowance to defray the costs incurred
2   by officers in paying for cleaning and maintenance. In ***Maciel v. City of Los***
3   ***Angeles***, 569 F.Supp.2d 1038 (C.D. Cal. 2008) the Court explained:

4   "*Plaintiff testified that it takes him 15 to 20 minutes per shift to*
5   *inspect and maintain his gear, including polishing each piece of the*
6   *leather equipment. The Court finds that Plaintiff is not entitled to any*
7   *recovery for maintenance activities because he is already provided*
8   *with adequate compensation under the collective bargaining*
9   *agreement for the activity.*

10   *"The collective bargaining agreement, to which Plaintiff is bound,*
11   *specifically addresses these maintenance activities. . . . Indeed, the*
12   *relevant agreement has a specific 'maintenance and repair stipend.'*
13   *The weight of the testimony and evidence demonstrates that the*
14   *stipend was designed to, and does, cover the maintenance costs. . . .*
15   *While Plaintiff testified that he polished his gear himself prior to each*
16   *shift, the weight of the evidence demonstrates that this was an*
17   *unreasonable activity. All other officers testified that they had the*
18   *option of sending out the equipment for a nominal fee, using a*
19   *protective cover, or polishing less frequently. The Court declines to*
20   *allow Plaintiff to receive additional compensation for these activities.*"

21   (569 F.Supp.2d at 105, footnote omitted.)

22   An earlier ruling in ***Nolan*** construing the same provision from the same MOUs
23   reached the same conclusion (***2009 Nolan Order*** 35:12-36:21(Exhibit 60))[7]:

24   "*As a practical matter, allowing Plaintiffs to recover compensation for*
25   *cleaning and maintaining their uniforms and equipment would lead to*

---

7   This was subject to a successful motion for reconsideration on other grounds, leading to the 2010 ***Nolan*** Order.

**DEFENDANT CITY OF LOS ANGELES'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

1       *inequities in the payment of wages by according greater wages to those*

2       *officers who clean and maintain their uniforms and equipment more*

3       *frequently or less expeditiously than their fellow officers.*" (***2009 Nolan***

4       ***Order*** 36:8-13).

5  As in ***Maciel*** and ***Nolan***, the Disputed Activities covered by the Allowance are

6  not compensable, justifying partial summary judgment on Issue 3.

7

8      **D.**    **Disputed Activities Concerning War Bag Contents, Such as**

9             **Helmets, Batons, First Responder's Kits and Hazardous**

10            **Materials Gear are not Compensable**

11     Plaintiffs seek compensation for time allegedly spent maintaining specific

12 items that they were required to possess for possible use in the field, including:

13 General Duty ("Ballistic") Helmets, batons, First Responder's Kits and gear,

14 including gas masks and protective clothing to be used if necessary to deal with

15 hazardous materials or in chemical or biological attacks. These items were

16 generally kept in Plaintiffs' War Bags. Many Plaintiffs have admitted that these

17 items never needed any routine maintenance (nor did the War Bags themselves),

18 and that they never performed maintenance on these items (UF 40-44). Plaintiffs

19 were not required to have War Bags present for daily inspections at roll call, and

20 were allowed to check and replenish the contents of their War Bags after roll call

21 (and hence, on the clock) (UF 40, 41). Several Plaintiffs testified that they

22 routinely kept the War Bags in the trunks of their personal vehicles when off duty,

23 transferring them to the trunk of their patrol vehicle (when they got the keys to it

24 after roll call) and checked the contents at that time (UF 42).

25     These Disputed Activities are not compensable. Because officers could do

26 their duties without maintaining these items, and because they could check and

27 maintain them while on duty, the City could not know whether any Plaintiffs were

28 voluntarily performing these activities while off duty, and so did not suffer or

permit Plaintiffs to do such work (assuming it could count as work). *"[W]here an employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of §207."* **Forrester v. Roth's I. G. A. Foodliner, Inc.**, 646 F.2d 413, 414 (9th Cir. 1981).

Further if officers chose to undertake these activities off-duty instead of on duty, no compensation is due. LAPD policy requires permission to engage in off-duty work (except for emergencies and court appearances) and requires the submission of requests for payment when overtime is worked (UF 48, 49). Plaintiffs have not alleged or otherwise contended that they were wrongly denied permission to work overtime, or that any request for overtime payment was denied.  If Plaintiffs chose to do work off duty that they could have done while on duty (e.g., maintaining or cleaning equipment) in violation of LAPD overtime policy it is not compensable. "*Otherwise, the [employer] would have no means of protecting itself from claims of overtime compensation.* " **Lindow v. U.S.**, 738 F.2d 1057, 1061-1062 (9th Cir. 1984).

Moreover, if these activities were undertaken while off duty, they were preliminary or postliminary activities excluded from compensability that were not integral and indispensable to the principal activities of the job, as evidenced by the fact that some Plaintiffs never performed them at all.

Third, these activities are *de minimis*. If any task comprising Disputed Activities is otherwise compensable, the measure of that compensable time is the minimum time necessary to complete the task. In **Anderson v. Mt. Clemens Pottery Co.**, 328 U.S. 680, 692, 66 S.Ct. 1187, 1194, 90 L.Ed. 1515 (1946) the Supreme Court held that:

"[U]*nder the conditions prevalent in the respondent's plant, compensable working time was limited to the minimum time*

18

**DEFENDANT CITY OF LOS ANGELES'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

1  *necessarily spent in walking at an ordinary rate along the most direct*

2  *route from time clock to work bench." (**Id.** at 692.)*

3  The Supreme Court acknowledged this holding in ***IBP. Inc. v. Alvarez***, 546 U.S.

4  521, 126 S.Ct. 514, 163 L. Ed. 2d 288, (2005):

5  *"[I]n Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct.*

6  *1187, 90 L.Ed. 1515 (19406, . . . we held that the time necessarily*

7  *spent by employees walking from time clocks near the factory*

8  *entrance gate to their workstations must be treated as part of the*

9  *workweek." **Id.** at 25-26 (citations omitted).*

10  The brief time required to perform maintenance of required War Bag contents, its

11  intermittent frequency (seldom to never), and the administrative difficulty

12  involved in determining which officers were performing such activities while off

13  duty, establish that the activities are rendered non-compensable under the three

14  pronged test for the *de minimis* doctrine set forth in ***Lindow v. U.S.***, 738 F.2d

15  1057 (9th Cir. 1984): *"[I]n determining whether otherwise compensable time is*

16  *de minimis, we will consider (1) the practical administrative difficulty of*

17  *recording the additional time; (2) the aggregate amount of compensable time; and*

18  *(3) the regularity of the additional work." (**Id.** at 1063.)* Accordingly, the Court

19  should grant partial summary judgment on Issue 4.

20

21  **E.    Disputed Activities Concerning Cleaning, Checking and Oiling of**

22  **Service Weapons are not Compensable**

23  Plaintiffs' time spent maintaining their service weapons is not compensable.

24  Plaintiffs were required to qualify with their service weapons up to five times per

25  year (required frequency decreases based on time in service), and their service

26  weapons required cleaning after they were fired. However, Plaintiffs were allowed

27  to qualify and to clean their weapons while on duty. If Plaintiffs instead chose to

28

1  clean their weapons off duty that activity is not compensable per **_Lindow_** (at 1061-
2  1062) as explained above.

3       If Plaintiffs choose to take target practice with their service weapons while
4  off duty, they may need to clean their weapons more frequently, but neither the
5  practice nor the cleaning would count as compensable work. Such activities might
6  aid some Plaintiffs in their work for LAPD, just as a program of off duty physical
7  conditioning might, but these are not compensable. In **_Dade County, Florida v._**
8  **_Alvarez_**, 124 F.3d 1380 (11th Cir. 1997) officers in a police department's Special
9  Response Team claimed that training to meet department mandated physical
10  fitness standards was compensable under the FLSA. The Eleventh Circuit held
11  that the off-duty activity neither met the test for compensable work nor that for an
12  integral and indispensable activity. (**_Id._** at 1185-1186.)

13       Plaintiffs also claim that they regularly check their service weapons to
14  determine whether a round is chambered (which takes no more than 15 seconds
15  and may be done after roll call), and that they also have to lubricate their service
16  weapons, which takes a few minutes, but do not claim to have submitted overtime
17  requests for these activities. These activities are of such brief duration, and so
18  difficult to monitor administratively, that they are not compensable under the *de*
19  *minimis* doctrine (**_Lindow_**, *supra*). The Court should thus grant summary
20  judgment, or partial summary judgment on Issue 5.

21

22       **F.      The City is not Liable for Disputed Activities Covered by**
23              **Premium Pay Credits under §207(h)**

24       Even if time spent maintaining War Bag items and service weapons were
25  otherwise compensable, and none of the constituent activities were *de minimis*, the
26  City would face no liability because the time spent on those activities does not
27  amount to more than 3 hours, 40 minutes in any DP (UF 64, 65). Section 207(h)
28  (2) provides: "*Extra compensation paid as described in paragraphs (5), (6), and*

*(7) of subsection (e) of this section shall be creditable toward overtime compensation payable pursuant to this section.*" Employers can use those credits to offset compensation otherwise due for compensable, yet not compensated, work. ***Biggs v. Joshua Hendy Corp.***, 183 F.2d 515, 517-519 (9th Cir. 1950); ***Alexander v. United States***, 32 F.3d 1571, 1576-1577 (Fed. Cir. 1994); ***Hesseltine v. Goodyear Tire & Rubber Co.***, 391 F.Supp.2nd 509, 521-523 (E.D. Tex. 2005).

This defense is doubly potent in this case, because the Court has already ruled that the City has adopted the partial overtime exemption provided by §207(k) and that "Gap Time" is not compensable (see, Order of June 22, 2009, Document Nos. 239, 237). Since the FLSA only requires overtime compensation for Plaintiffs if they work more than 171 hours in a DP, and since their maximum regularly scheduled hours are 160, there is always a gap of at least 11 hours (171-160) for the Plaintiffs.

The applicable MOUs provide Plaintiffs with pay at time and one half for work done outside of their regular or normal working hours – both when they work more than the hours scheduled for a particular watch, and when they work on what would otherwise be their day(s) off (Exhibits 9, 10, 11 Article 6), coming within the credit provided by §§207(h) (2) and 207(e) (5) & (6). That credit can be used to offset any compensation that might be due for compensable, yet not compensated, time.

Because the City pays overtime at time and one half of the hourly rate ("MOU overtime"), each hour of MOU overtime in the gap generates credit under §207(h). Where Plaintiffs have worked more than 171 hours in a DP, the FLSA entitles them to compensation at straight time rates for the hours in the gap (*e.g.*, between 160 and 171) and time and one half for hours above 171 (*See*, *e.g.*, 29 CFR §§778.315, 778.317, 778.322). Since they receive MOU overtime for all hours over those regularly scheduled, this creates a §207(h) credit of .5 hours for each MOU overtime hour in the gap.

**DEFENDANT CITY OF LOS ANGELES'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

Therefore, as long as there are at least two hours of MOU overtime for every hour of compensable, but uncompensated, time, the credit outweighs any shortfall, and there is no liability. This two to one ratio means that whenever the amount of compensable, but uncompensated, time is less than or equal to one third of Gap Time there is no liability.[8] The minimum amount of Gap Time is 11 hours (660 minutes), and one third of that amount is 3 hours, 40 minutes (220 minutes).

The undisputed facts show that the minimum time necessarily spent by Plaintiffs maintaining their service weapons and the required protective gear carried in their War Bags is far less than 220 minutes in any DP (UF 64). In fact, these activities require no more than 8 minutes in any DP, leaving a cushion of at least 138 minutes for any miscellaneous Disputed Activities not rendered non-compensable for the reasons detailed in previous portions of this brief (UF 66).

Hence, even if those activities were otherwise compensable, the time spent on them is not enough to create any liability. In every DP, for every Plaintiff, either: a) the amount of compensable time spent on such activities, plus additional MOU overtime is not enough to add up to 171 hours; or b) that amount exceeds 171 hours, but the credit flowing from the MOU overtime outweighs any potential wages due. Accordingly, the Court should grant summary judgment, or partial summary judgment on Issue 6. Further, partial summary judgment on any combination of Issues 1-6 excluding compensability or liability as to all Disputed Activities justifies partial summary judgment on Plaintiffs' first claim and summary judgment as to the entire case.

---

[8]     Using slightly different terminology, Dwight Steward, in an expert declaration submitted by Plaintiffs in opposition to a prior motion, testified, *"[T]he premium portion of the overtime payment, which can be expressed in terms of pay or hours is equal to 1/3 of the gap time hours or pay"* (Exhibit 61, ¶9.)

### G.      Plaintiffs are not entitled to Injunctive Relief

Individual plaintiffs are not entitled to the injunctive relief sought in Plaintiffs' third claim. As explained in **_Powell v. State of Florida_**, 132 F.3d 677 (11th Cir. 1998):

> *"The district court properly held that the right to bring an action for injunctive relief under the Fair Labor Standards Act rests exclusively with the United States Secretary of Labor. See 29 U.S.C. §§ 211(a), 216(b) (1994); Reorg. Plan No. 6 of 1950, 15 Fed.Reg. 3174, reprinted in 5 U.S.C.App. at 1469 (1994). Although this Court has not yet addressed the issue, we follow the decisions of the other circuits which have held that the plain language of the Act provides that the Secretary of Labor has the exclusive right to bring an action for injunctive relief. (**_Id._** at 678-679.)*

Accordingly, the City is entitled to summary judgment, or partial summary judgment on Issue 8 as to Plaintiffs' third claim.

### H.      Plaintiffs are not entitled to Declaratory Relief

In addition to damages for the disputed activities, Plaintiffs seek declaratory relief establishing that those activities are compensable under the FLSA (Complaint at ¶¶27-30). The award of declaratory relief under 28 U.S.C. §2201 is discretionary. **_Solenoid Devices, Inc. v. Ledex, Inc_**_.,_ 375 F.2d 444 (9th Cir. 1967). Where the relief sought in a declaratory relief claim is duplicative of relief sought in another claim or defense, trial courts may exercise their discretion to dismiss the claim as unnecessary. In **_Englewood Lending Inc. v. G & G Coachella Investments, LLC_**, 651 F.Supp.2d 1141 (C. D. Cal. 2009), the Court reasoned:

> *"The Court looks to the purpose of the Declaratory Judgment Act when determining whether to entertain a declaratory judgment claim. See Hal Roach, 896 F.2d at 1555. The purpose of the Declaratory*

819\06\MSJ-Brief.pld

1  *Judgment Act is to relieve potential defendants from the Damoclean*
2  *threat of impending litigation which a harassing adversary might*
3  *brandish, while initiating suit at his leisure-or never. Id. citing Societe*
4  *de Conditionnement v. Hunter Engineering Co., 655 F.2d 938, 943*
5  *(9th Cir.1981).*
6  *"Here the first Counterclaim overlaps with the relief sought in claims*
7  *four through seven of the FAC and with two of the affirmative*
8  *defenses the Borrowers assert. Accordingly, entertaining the first*
9  *Counterclaim does not serve the intended purpose the Declaratory*
10  *Judgment Act. Here the Borrowers do not live in fear of a potential*
11  *suit; they are already obliged to defend against one. See Hal Roach,*
12  *896 F.2d at 1555." (**Id.** at 1145.)*

13  The Court should reach the same outcome here, and grant summary judgment, or
14  partial summary judgment on Issue 9, because the declaratory relief claim – which
15  alleges no substantive facts in itself -- adds nothing to the lawsuit, but merely
16  seeks to duplicate the award sought in Plaintiffs' claim for monetary relief.

17
18  ## 4.   <u>CONCLUSION</u>

19  Plaintiffs' uniform donning & doffing and associated preliminary and
20  postliminary tasks are not compensable. ***Bamonte*** controls on this point and on
21  the facts of our case -- and in light of the decisions in ***Dager***, ***Reed***, ***Nolan*** and
22  ***Vallerand*** -- ***Bamonte*** cannot be meaningfully distinguished. Further, as per
23  ***Maciel*** and ***Nolan*** (2009), the maintenance activities covered by the Uniform,
24  Maintenance and Equipment Allowance are not compensable on independent
25  grounds. The Court should grant partial summary judgment as to Issues 1-3.

26  Disputed Activities concerning protective gear carried in Plaintiffs' War
27  Bags and Plaintiffs' service weapons are also not compensable, since Plaintiffs are
28  not required to perform them while off duty (***Lindow***), they are *de minimis*

1    (***Lindow***), or they are not integral and indispensable to Plaintiffs' principal

2    activities (***Dade County***) –warranting partial summary judgment on Issues 4 and

3    5. To the extent otherwise compensable these tasks and any stray Disputed

4    Activities evading exclusion from compensability under Issues 1-3 take less than

5    220 minutes per DP -- too little time to outweigh the City's premium pay credits

6    under §207(h) -- so that the City cannot be found liable to Plaintiffs. This justifies

7    partial summary judgment on Issue 6 and Issues 1-6 justify summary judgment

8    disposing of the entire case, as well as partial summary judgment on Plaintiffs'

9    first claim (Issue 7).

10       The Court has independent grounds for granting partial summary judgment

11    on Plaintiffs' second and third claims for injunctive and declaratory relief (Issues

12    8 and 9) since the declaratory relief claim is duplicative, and only the Secretary of

13    Labor can seek an injunction under §216.

14

15    DATED:  August 19, 2010         ALBRIGHT, YEE & SCHMIT, LLP

16

17                    /s/ Lucien A. Schmit III

18                    Lucien A. Schmit III

                       Attorneys for Defendant

19                    CITY OF LOS ANGELES

20

21

22

23

24

25

26

27

28

**DEFENDANT CITY OF LOS ANGELES'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**