**EXHIBIT 67**

ORIGINAL

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DAVID NUNEZ, ET AL.                    )
                                       )
              PLAINTIFF,               )
                                       )
       VS.                             )NO. CV 06-6390 VBF(MANX)
                                       )
THE CITY OF LOS ANGELES, AND DOES      )
1 THROUGH 50, INCLUSIVE,               )
                                       )
              DEFENDANTS.              )
                                       )

DEPOSITION OF SHAWN SVOBODA

MONDAY, MARCH 23, 2009

FILE NO.  090323CJ1

REPORTED BY:  CAROLINE JETTER, CSR NO. 11568



COURT REPORTERS, INC.

Personal Court Reporters
Sylvia Becker & Associates
Rose Reporting Service
Clifton-Strickland Reporters
Reason Reporting

Van Nuys • (818) 988-1900 • Los Angeles • (323) 857-1010
Ventura (805) 654-1058 • Santa Barbara • (805) 966-0177

11:32AM 1    the Sam Browne belt; is that correct?

11:32AM 2        A.   Yes.

11:33AM 3        Q.   And can you describe, during the period you

11:33AM 4    were on patrol, what the Sam Browne belt was and what

11:33AM 5    items you would keep in it?

11:33AM 6        A.   The Sam Browne belt, as was issued to me, is a

11:33AM 7    leather inner belt, a leather outer belt, significantly

11:33AM 8    larger, consists of -- we were issued one case to hold

11:33AM 9    the handcuff.

11:33AM 10       My belt now has two cases, two handcuffs.  We

11:33AM 11   were issued a pepper spray holder.  We were issued a key

11:33AM 12   holder.  We were issued a holster -- all these leather.

11:33AM 13       We were issued a baton holder with the plastic

11:33AM 14   and a baton ring for our P.R. 24 side handle baton.  And

11:34AM 15   recently we were issued a flashlight holder for the new

11:34AM 16   department approved flashlight.

11:34AM 17       Then my current belt is actually made of a --

11:34AM 18   it's made of a resin.  It's not leather.  I don't know

11:34AM 19   what the name of the resin is, but it's the latest

11:34AM 20   department approved belt.  And it requires different

11:34AM 21   maintenance than the leather belt.  But I had the same

11:34AM 22   types of required equipment.

11:34AM 23       Q.   And when were you issued the current belt?

11:34AM 24       A.   I purchased it on my own.  It's significantly

11:34AM 25   lighter, more flexible and easier to maintain.

45

949

| | | |
|---|---|---|
| 11:34AM | 1 | Q.   And when did you purchase that? |
| 11:34AM | 2 | A.   Approximately a month or two before I went to |
| 11:35AM | 3 | 77th division.  So approximately May of last year. |
| 11:35AM | 4 | Q.   So going to the original Sam Browne belt, I |
| 11:35AM | 5 | take it that's what you used during the time you were |
| 11:35AM | 6 | with central traffic? |
| 11:35AM | 7 | Oh, I'm sorry.  We have to change the disk. |
| 11:35AM | 8 | Just hold on one second.  We have to take a short break. |
| 11:35AM | 9 | VIDEOGRAPHER:  We're off the videotaped record |
| 11:35AM | 10 | at 11:35 A.M.  This concludes tape and disk one in the |
| 11:35AM | 11 | ongoing deposition of Shawn Svoboda. |
| 11:35AM | 12 | (A break was taken.) |
| 11:42AM | 13 | VIDEOGRAPHER:  We're on the videotaped record |
| 11:42AM | 14 | at 11:41 A.M.  This is the ongoing deposition of Shawn |
| 11:42AM | 15 | Svoboda.  We're commencing on the videotape record |
| 11:42AM | 16 | beginning of tape and disk two at 11:42 A.M. |
| 11:42AM | 17 | BY MR. ZABB: |
| 11:42AM | 18 | Q.   Now, going back to the originally issued Sam |
| 11:42AM | 19 | Browne belt, which I take it you wore during the time |
| 11:42AM | 20 | you were with central traffic division; is that right? |
| 11:42AM | 21 | A.   Yes. |
| 11:42AM | 22 | Q.   Could you explain what maintenance was |
| 11:43AM | 23 | associated with that item of equipment during the time |
| 11:43AM | 24 | you were with traffic division? |
| 11:43AM | 25 | A.   The equipment had to be checked to see that it |

46

950

| | |
|---|---|
| 11:43AM | 1 | was in good working order.  Each individual piece of the |
| 11:43AM | 2 | equipment required some different type of maintenance. |
| 11:43AM | 3 | But the -- all the leather gear itself |
| 11:43AM | 4 | required -- was required to be shined and cleaned and |
| 11:43AM | 5 | the -- and presentable.  And the handcuffs had to be |
| 11:43AM | 6 | functional. |
| 11:43AM | 7 | The firearm had to be of course maintained in |
| 11:43AM | 8 | good working order, cleaned, loaded gear.  Your |
| 11:43AM | 9 | ammunition needed to be loaded and your magazine -- oh, |
| 11:43AM | 10 | the other thing I didn't mention is magazine pouch.  The |
| 11:43AM | 11 | department also issued a magazine pouch. |
| 11:43AM | 12 | The side handle baton, needed to make sure that |
| 11:43AM | 13 | the bolt was tight on it, it was in good working order. |
| 11:43AM | 14 | The collapsible baton, make sure it was in good working |
| 11:44AM | 15 | order as well.  And that is pretty much the extent of |
| 11:44AM | 16 | it. |
| 11:44AM | 17 | Q.   Actually, I'm sorry.  I didn't ask that |
| 11:44AM | 18 | question exactly the way I meant to which is that, aside |
| 11:44AM | 19 | from the items on the belt, items on the belt itself -- |
| 11:44AM | 20 | A.   The belt itself. |
| 11:44AM | 21 | Q.   And the maintenance of the belt itself. |
| 11:44AM | 22 | A.   The inner or the Sam Browne belt? |
| 11:44AM | 23 | Q.   Well, either or both of those two items.  Is |
| 11:44AM | 24 | there maintenance associated with those two items? |
| 11:44AM | 25 | A.   The inner belt needs to be shined in order to |

47

951

| | | |
|---|---|---|
| 11:44AM | 1 | maintain its look and then the outer belt needs to be |
| 11:44AM | 2 | shined, cleaned on a regular basis. |
| 11:44AM | 3 | Q.   And does that involve some kind of a leather |
| 11:44AM | 4 | polish? |
| 11:44AM | 5 | A.   Yes. |
| 11:44AM | 6 | Q.   And how frequently would you do that during the |
| 11:45AM | 7 | time you were with central traffic? |
| 11:45AM | 8 | A.   Approximately every other D.P. |
| 11:45AM | 9 | Q.   Now, was -- would there be occasions when you |
| 11:45AM | 10 | took it to a professional shoe shine guy to shine the |
| 11:45AM | 11 | belt? |
| 11:45AM | 12 | A.   Approximately twice a year. |
| 11:45AM | 13 | Q.   And how much does he charge, if you could |
| 11:45AM | 14 | recollect? |
| 11:45AM | 15 | A.   Approximately $20 to $40. |
| 11:45AM | 16 | Q.   And was there a professional available at |
| 11:45AM | 17 | central traffic division itself, or did you have to go |
| 11:45AM | 18 | out to somebody? |
| 11:46AM | 19 | A.   There was a professional located on the |
| 11:46AM | 20 | premises during certain times.  However, the quality was |
| 11:46AM | 21 | touch and go.  So depending on the reason why I would |
| 11:46AM | 22 | take it out to a professional, I might take it somewhere |
| 11:46AM | 23 | else.  I believe I did take it somewhere else, actually, |
| 11:46AM | 24 | the second time. |
| 11:46AM | 25 | Q.   Okay.  And around when would you shine the |

48

952

| | | |
|---|---|---|
| 11:46AM | 1 | belt?  Would that be in the station?  At home?  Or when |
| 11:46AM | 2 | would you do it? |
| 11:46AM | 3 | A.   I would do it at -- sometimes at home. |
| 11:46AM | 4 | Sometimes at the station. |
| 11:47AM | 5 | Q.   And as far as the baton goes, during the time |
| 11:47AM | 6 | you were at central traffic, was there any maintenance |
| 11:47AM | 7 | associated with that item? |
| 11:48AM | 8 | A.   If it got dirty, I cleaned it.  I can only |
| 11:48AM | 9 | remember cleaning it one time, and then just making sure |
| 11:48AM | 10 | that the bolt on the side -- the bolt got loose only |
| 11:48AM | 11 | once, just retightening.  That's pretty maintenance |
| 11:48AM | 12 | free. |
| 11:48AM | 13 | Q.   And as far as the asp goes or the collapsible |
| 11:48AM | 14 | baton, is there any maintenance associated with that |
| 11:48AM | 15 | item during the time you were at central traffic? |
| 11:48AM | 16 | A.   I did put some oil in it once.  And I cleaned |
| 11:48AM | 17 | some of -- I cleaned it up a little bit.  I remember |
| 11:48AM | 18 | doing it one time and dusting. |
| 11:48AM | 19 | Q.   And as far as the pepper spray or O.C. spray, |
| 11:48AM | 20 | is there any maintenance associated with that item of |
| 11:48AM | 21 | equipment? |
| 11:48AM | 22 | A.   I have to replace it every -- I believe it's |
| 11:48AM | 23 | every six months. |
| 11:49AM | 24 | Q.   And you can tell when you have to replace it |
| 11:49AM | 25 | based on the expiration date? |

49

993

11:49AM  1      A.   It does have a date on it, yes.  I usually

11:49AM  2  don't go off the date, though.  I usually just go from

11:49AM  3  when I purchase it and then six months down the road, I

11:49AM  4  know it's time to replace it.

11:49AM  5      Q.   And as far as the handcuffs on the Sam Browne

11:49AM  6  belt, what sort of maintenance would you perform on

11:49AM  7  those items during the time you were with central

11:49AM  8  traffic division?

11:49AM  9      A.   It would be as-needed.  Often times I would

11:49AM  10  handcuff a suspect and either some type of a

11:49AM  11  communicable disease or it had blood on them, and the

11:49AM  12  handcuffs became dirty frequently.

11:49AM  13      And so I would disinfect them by boiling

11:49AM  14  them -- not boiling them.  By boiling a pot of water and

11:50AM  15  then putting the handcuffs in a pot of water so that it

11:50AM  16  could get rid of anything that was nasty in them.  And

11:50AM  17  then after that I would have to oil them.

11:50AM  18      Q.   So could you give an estimate as to how

11:50AM  19  frequently during an average deployment period that

11:50AM  20  scenario would occur when you were with central traffic?

11:50AM  21      A.   A approximately once a D.P. and then more

11:50AM  22  frequently I would wipe them down probably every other

11:50AM  23  shift.  I would wipe them down with some type of a

11:50AM  24  disinfectant cloth.

11:50AM  25      Q.   And as far as putting them in a pot of water

50

954

1   STATE OF CALIFORNIA                          )

2   COUNTY OF LOS ANGELES                        )   ss.

3

4

5          I, Caroline Jetter, C.S.R. No. 11568, in

6   and for the State of California, do hereby certify:

7          That prior to being examined, the witness named

8   in the foregoing deposition was by me duly sworn to

9   testify to the truth, the whole truth, and nothing but the

10  truth;

11         That said deposition was taken down by me in

12  shorthand at the time and place therein named and

13  thereafter reduced to typewriting under my direction, and

14  the same is a true, correct, and complete transcript of

15  said proceedings;

16         I further certify that I am not interested in the

17  event of the action.

18         Witness my hand this 7th   day of

19  april_____, 20 09.

20

21

22

23                        Certified Shorthand

24                        Reporter for the

25                        State of California

# EXHIBIT 68

ORIGINAL

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

THE LOS ANGELES POLICE          )
PROTECTIVE LEAGUE               )
("LAPPL"), DAVID NUNEZ,         )
GEORGE MEJIA, DAVE              )
MCDOWELL, HUMBERTO              )
TOVAR, JOSEPH ALBA, AND         )
ROBERT BROGELMAN, ON            )
BEHALF OF THEMSELVES            )
INDIVIDUALLY AND ALL            )
OTHERS SIMILARLY SITUATED,)
                                )
          PLAINTIFFS,           )
                                )
     VS.                        )     CASE NO. CV 06 6390 VBF (MANX)
                                )
THE CITY OF LOS ANGELES,        )
AND DOES 1-50, INCLUSIVE,       )
                                )
          DEFENDANTS.           )
_____)

DEPOSITION OF:  JOHN R. MUMMA

DATE TAKEN:  JUNE 25, 2009

REPORTER:  MARSHALL LATINER

CSR NO. 3308

956

JOHN R. MUMMA - EXPERT

1    Q.    SO IF YOU HAVE OFFICERS TWO TO A UNIT AND, SAY, 60

2    IN A ROLL CALL, THAT MEANS ABOUT 30 MINUTES; IS THAT RIGHT?

3    A.    YES.

4        SOME OF THEM WILL HAVE GOTTEN THEIR EQUIPMENT AHEAD

5    OF TIME, SOME WILL BE DOING OTHER ADMINISTRATIVE THINGS.

6    THEY'RE NOT NECESSARILY GOING TO GET IN LINE ALL AT ONE TIME.

7    I DON'T THINK I HAVE EVER STOOD IN A NORMAL ROLL CALL LINE FOR

8    THE KIT ROOM FOR MORE THAN 15 MINUTES.

9    Q.    THEN IF YOU'RE ASSIGNED TO A CAR WITH SOMEONE, WHEN

10   YOU'RE IN LINE FOR 15 MINUTES, WHAT ARE THEY DOING?

11   A.    IT DEPENDS GREATLY.  IF IT'S A P-1 AND P-3, IT WILL

12   BE THE P-1 STANDING IN LINE GETTING ALL THE EQUIPMENT.  THE

13   P-3 WILL PROBABLY BE DOING SOME RATINGS OR SOMETHING FROM THE

14   DAY PRIOR ON THEIR PROBATIONARY.

15       SOMETIMES YOU HAVE TO GO TO THE CAPTAIN'S OFFICE

16   FOR ADMINISTRATIVE THINGS OR WATCH COMMANDER'S OFFICE.  VERY

17   OFTEN IN ROLL CALL YOU WILL GET KICK-BACKS WHERE REPORTS OR

18   EVIDENCE ARE HANDED BACK TO YOU BECAUSE YOU MADE A MISTAKE

19   SOMEWHERE.

20       SO THAT'S USUALLY THE FIRST ORDER OF BUSINESS, YOU

21   FINISH WHATEVER NEEDS TO BE DONE.  SOMETIMES YOU ARE SIGNING

22   SUBPOENAS.  I MEAN, THERE'S A LOT OF THINGS.

23   Q.    THIS ALL HAPPENS BETWEEN ROLL CALL AND WHEN YOU CAN

24   GET TO THE VEHICLE; RIGHT?

25   A.    GENERALLY ALL OF THOSE THINGS I JUST DESCRIBED WOULD

145

951

JOHN R. MUMMA - EXPERT

1      A.    ONE OF TWO WAYS.   EITHER BY LOOKING AT YOUR WATCH,

2   YOU KNOW THAT YOU'RE ABOUT TO BE AT END OF WATCH AND SO YOU

3   DRIVE TO THE STATION SO AS NOT TO INCUR THE WRATH OF

4   UNAUTHORIZED OVERTIME.

5          OR IF THE -- AND THIS ACTUALLY ISN'T EVEN THE

6   PRACTICE ANY LONGER.   BUT FOR MANY YEARS THE PRACTICE WAS

7   YOU WOULD HEAR BROADCAST OVER THE RADIO, "MORNING WATCH IS

8   DOWN."   THAT MEANS THEY'RE OUT OF ROLL CALL.   THE OFFGOING PM

9   WATCH OFFICERS CAN NOW COME INTO THE STATION FOR THE PURPOSE

10  OF FACILITATING THE HANDOFF OF CARS AND THINGS.

11          THAT PRACTICE ENDED WITH THE ELIMINATION OF CODE 7.

12  THAT IS NO MORE.   THAT YOU CAN'T -- IT DOESN'T WORK LIKE THAT

13  ANYMORE.   YOU CAN'T DO THAT ANYMORE.

14     Q.    SO NO ONE EVER MAKES THAT ANNOUNCEMENT," MORNING

15  WATCH IS DOWN"?

16     A.    NOT ANY LONGER, BECAUSE IT'S NOT A DIRECT HANDOFF

17  ANY LONGER.   IT USED TO BE -- THERE USED TO BE AN OVERLAP OF

18  45 MINUTES ON ALL WATCHES.   IF MY WATCH STARTED AT 12:00, THE

19  OFFGOING GUYS DIDN'T GET OFF UNTIL 12:45, WHICH ALSO HAPPENED

20  TO BE THE LUNCH PERIOD THAT YOU TOOK IN THE MIDDLE OF THE

21  SHIFT.   THAT'S HOW THEY WORKED OUT THE TIME.

22          IT DOESN'T WORK THAT WAY NOW.   YOU GENERALLY WORK

23  6:00 A.M. TO 6:00 P.M.   YOU ARE DONE AT 6:00 P.M. AND THE 6:00

24  P.M. GUYS START AT 6:00 P.M. WITH THEIR ROLL CALL.   SO THERE

25  IS NO PARKING LOT INTERACTION BETWEEN THE TWO.

150

958

```
 1   STATE OF CALIFORNIA     )
                             ) SS.
 2   COUNTY OF LOS ANGELES   )

 3

 4          I, MARSHALL LATINER, A CERTIFIED SHORTHAND REPORTER

 5   IN AND FOR THE STATE OF CALIFORNIA, DO HEREBY CERTIFY:

 6          THAT THE WITNESS NAMED IN THE FOREGOING DEPOSITION

 7   HAD, BEFORE THE COMMENCEMENT OF THE DEPOSITION, SOLEMNLY

 8   STATED UNDER PENALTY OF PERJURY THAT THE EVIDENCE GIVEN IN

 9   THIS ISSUE OR MATTER SHALL BE THE TRUTH, THE WHOLE TRUTH,

10   AND NOTHING BUT THE TRUTH;

11          THAT SAID PROCEEDINGS WERE TAKEN DOWN IN

12   STENOGRAPHIC WRITING BY ME AND THEREAFTER REDUCED TO A

13   TRANSCRIPT UNDER MY DIRECTION.

14          I FURTHER CERTIFY THAT THE FOREGOING IS A FULL,

15   TRUE, AND CORRECT TRANSCRIPT OF SAID PROCEEDINGS.

16          I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR NOR

17   RELATED TO ANY PARTY TO SAID ACTION, NOR IN ANYWISE INTERESTED

18   IN THE OUTCOME THEREOF.

19          IN WITNESS WHEREOF, I HAVE HEREUNTO SUBSCRIBED MY

20   NAME THIS ___1ST___ DAY OF _____JULY_____ 2009.

21

22

23                        Marshall Latiner
                          _____
24                        MARSHALL LATINER
                          CERTIFIED SHORTHAND REPORTER
25
```

959

# EXHIBIT 69

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA


DAVID NUNEZ, ET AL,                    )
                                       )CASE NO. CV 06-6390
                    PLAINTIFFS,        )        VBF(MANx)
                                       )
            vs.                        )
                                       )
THE CITY OF LOS ANGELES, AND DOES      )
1 THROUGH 50, INCLUSIVE,               )
                                       )
                    DEFENDANTS.        )
                                       )
————————————————————————————————————————


DEPOSITION OF MATTHEW MAFFEI

TUESDAY, JANUARY 27, 2009


FILE NO.  090127VR1
REPORTED BY:  VERONICA RODRIGUEZ, CSR NO. 12215, RPR

960

| | | |
|---|---|---|
| 10:53 | 1 | deterioration. |
| 10:53 | 2 | Q   So you put it in the washer machine, as far as |
| 10:53 | 3 | the nylon holder? |
| 10:53 | 4 | A   The nylon holder, yes.  The panels are just |
| 10:53 | 5 | wiped down. |
| 10:53 | 6 | Q   And do you wipe it down regularly or once in a |
| 10:53 | 7 | while; what's your general practice? |
| 10:53 | 8 | A   I would probably wipe it down once a week. |
| 10:53 | 9 | Q   Using a kind of type of cleaning solvent or |
| 10:54 | 10 | anything like that? |
| 10:54 | 11 | A   No, not on the panels.  Just water with a towel. |
| 10:54 | 12 | Q   Now, you also have something called the Sam |
| 10:54 | 13 | Browne belt; is that correct? |
| 10:54 | 14 | A   Yes. |
| 10:54 | 15 | Q   Can you explain what that is, please? |
| 10:54 | 16 | A   The Sam Browne belt is a large belt that you |
| 10:54 | 17 | wear around your waist that holds all your equipment.  In |
| 10:54 | 18 | the front, you'll have your ammo pouch, which consists of |
| 10:54 | 19 | two magazines full of ammunition.  Next to that you'll |
| 10:54 | 20 | have your canister of O.C. spray.  Then going around the |
| 10:54 | 21 | belt you'll have a baton holder.  Next to that, you'll |
| 10:54 | 22 | have an area for your keys, like, a little key holder, |
| 10:54 | 23 | for lack of a better term.  You'll have either one or two |
| 10:55 | 24 | cuff cases.  That's just preference.  I carry two.  Then |
| 10:55 | 25 | on whichever side you shoot from, you'll have your gun, |

Personal Court Reporters • San Fernando Valley • (818) 988-1900 • Orange County • (714) 558-8910 • Ventura • (805) 654-1058

25

| | | |
|---|---|---|
| 10:55 | 1 | which includes obviously, the gun and a holster. |
| 10:55 | 2 | Q   And is there any maintenance associated with the |
| 10:55 | 3 | belt as opposed to the items on the belt, the belt |
| 10:55 | 4 | itself? |
| 10:55 | 5 | A   There is.  The belt itself requires polishing |
| 10:55 | 6 | every once in a while.  Other than that, there's not |
| 10:55 | 7 | really any maintenance with the belt itself. |
| 10:55 | 8 | Q   And do you take it to a shoe shine place to get |
| 10:55 | 9 | it polished? |
| 10:55 | 10 | A   No. |
| 10:55 | 11 | Q   You polish it yourself? |
| 10:55 | 12 | A   Yes. |
| 10:55 | 13 | Q   And when you say once in a while, can you be |
| 10:55 | 14 | more specific? |
| 10:55 | 15 | A   Yeah.  The belt itself probably requires |
| 10:55 | 16 | polishing only about once a month. |
| 10:55 | 17 | Q   And where do you do that? |
| 10:56 | 18 | A   I do it on what's called the bench, which is in |
| 10:56 | 19 | the locker room.  There's always some sort of bench that |
| 10:56 | 20 | you can lay it out on and polish your stuff. |
| 10:56 | 21 | Q   Now, going through the various assignments that |
| 10:56 | 22 | you've had and skipping over the last two, where you |
| 10:56 | 23 | weren't wearing any of the uniform at all, just going |
| 10:56 | 24 | back to Harbor Area field training officer and going |
| 10:56 | 25 | backwards from that, when you were a field training |

1  STATE OF CALIFORNIA                    )

2  COUNTY OF LOS ANGELES                  )   ss.

3

4

5          I, Veronica Rodriguez, C.S.R. No. 12215, in and for

6  the State of California, do hereby certify:

7          That prior to being examined, the deponent named

8  in the foregoing deposition was by me duly sworn to

9  testify the truth, the whole truth, and nothing but the

10  truth;

11          That said deposition was taken down by me in

12  shorthand at the time and place therein named and

13  thereafter reduced to typewriting under my direction, and

14  the same is a true, correct, and complete transcript of

15  said proceedings;

16          I further certify that I am not interested in the

17  event of the action.

18          Witness my hand this *13th* _____ day of

19  _____*February*_____ , 20_*09*_.

20

21

22          _____

23          Certified Shorthand

24          Reporter for the

25          State of California

963

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

THE LOS ANGELES POLICE
PROTECTIVE LEAGUE ("LAPPL"),
DAVID NUNEZ, GEORGE MEJIA,
DAVE McDOWELL, HUMBERTO
TOVAR, JOSEPH ALBA, and
ROBERT BROGELMAN, on behalf of
themselves individually and all others
similarly situated,
     Plaintiffs,

v.

THE CITY OF LOS ANGELES, and
DOES 1-50, inclusive,
     Defendants.

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

COLLECTIVE ACTION

CASE NO: CV 06 6390 VBF (MANx)

**Declaration and Expert Report**

**Dwight D. Steward, PH.D.**

**September 8, 2009**

6500 River Place Boulevard
Building V, Suite 202
Austin, Texas 78730
512-476-3711

964

**Introduction**

1.      My name is Dwight Steward and I am an economist and statistician.  I have been retained by plaintiffs' counsel to provide economic and statistical research in this case.

2.      As an economist and statistician, I have provided consultation, reports, and expert witness testimony on statistical and economic issues involving employment and labor market discrimination, wage and hour violations, and economic damages in both litigation and non-litigation settings.  I have served as an expert witness and consultant in federal and state court wage and hour cases in the states of California, Georgia, Texas, Illinois, Iowa, Missouri, Nebraska, New Jersey, New York, Louisiana, and Pennsylvania.  In addition to serving as a consultant and expert witness, I have also held teaching positions in the Department of Economics at the University of Texas at Austin, the Red McCombs School of Business at the University of Texas at Austin and in the College of Business Administration at Sam Houston State University.  In my teaching positions, I taught numerous courses in statistics, economics, and corporate finance.  My full curriculum vita is attached to this report.

3.      It is my understanding that the plaintiffs, who are Los Angeles Police Department (LAPD) police officers, sergeants, and lieutenants, allege that the City of Los Angeles has failed to compensate them for time spent donning uniforms and special police protective gear before their work shifts and the doffing of the uniforms and gear after their work shifts, along with failure to compensate them for other pre and post shift tasks required by LAPD and

2

q 65

associated with the uniforms and gear.  In this report, I provide a description of the methodology for calculating the minimum amount of donning and doffing time that would result in uncompensated overtime work by LAPD officers resulting in overtime pay liability for LAPD under the FLSA.  I use the methodology to perform example calculations for named Plaintiffs Mr. David Nunez and Mr. George Mejia.

4.      In my analysis, I reviewed court documents and partial payroll records.  A full list of the documents that I relied upon is shown in Exhibit A which is attached to this report.  I respectfully reserve the right to make changes in this report.

**Background**

5.      As mentioned, the plaintiffs allege that they failed to receive compensation for the time spent donning and doffing LAPD required uniforms and special protective gear.  According to the plaintiffs' complaint, the uncompensated activities include time spent donning, doffing, washing, and caring for bullet proof vests, utility belts, uniforms, badges, protective footwear and preparation of First Responder kits and Ballistic Helmets.  The plaintiffs' contend that under the FLSA they would have been entitled to additional overtime pay had the City compensated them for the time spent performing these activities.

6.      It is my understanding, for law enforcement employees with an employer who has adopted the FLSA 7k exemption, that the FLSA requires the payment of overtime to LAPD police officers when they work in excess of 171

3

966

hours during a four week work period. The work period for LAPD officers is 28 days. The work periods are also referred to as deployment schedules or deployment periods in the LAPD documents that I reviewed. The City currently pays LAPD officers overtime before they reach the 171 hours in a deployment period required by the FLSA, pursuant to the applicable collective bargaining agreement or Memorandum of Understanding (MOU).

   7.  According to the MOU between the City and the LAPD union, the City currently pays LAPD officers overtime for hours worked in excess of their regularly scheduled hours during a deployment period. It is my understanding that LAPD officers are regularly scheduled to work either 160 or 156 hours in a 28 day deployment period. In a 160 hour deployment schedule, the officer typically works 16 shifts of 10 hours during the deployment period. An officer working a 160 hour deployment schedule would begin earning overtime for time worked in excess of 160 hours in a 28 day work period. In a 156 hour deployment schedule, an officer typically works 13 shifts of 12 hours during the deployment period. An officer working a 156 hour deployment schedule would begin earning overtime for time worked in excess of 156 hours in a 28 day work period.

   8.  The hours worked between the regularly scheduled hours and 171 hour overtime FLSA threshold is referred to as the 'gap time' in the documents that I reviewed. Accordingly in a 160 hour deployment period, the

4

961

gap time is 11 hours.  In a 156 hour deployment period, the gap time is 15 hours.[1]

9.    It is my understanding that the City is allowed to credit the premium portion of overtime payments for hours worked during the gap time to any unpaid donning/doffing time.  The City pays officers time-and-a-half (1.5) for overtime hours.  The premium portion of the overtime payment, which can be expressed in terms of pay or hours, is equal to 1/3 of the gap time hours or pay.  For example if an officer was earning $20 an hour for regular pay then they would earn 1.5 times or $30 an hour for overtime hours worked.  The overtime premium in this example is equal to ($20-$10)/$30 = $10/$30 = 1/3 of the pay.  The overtime premium if expressed in terms of hours worked is also equal to 1/3 of the gap time hours.

**Calculating the minimum amount of donning and doffing time to establish FLSA overtime pay liability**

10.   As mentioned, I calculate the minimum amount of donning and doffing time that would be required for the officer to have unpaid overtime under FLSA.  In the current setting an officer would have unpaid overtime if the hours worked exceeds the 171 hours FLSA threshold and exceeds the gap time credit that the City receives from paying overtime under the MOU.

11.   For an officer who works more than 171 hours and is regularly scheduled for a 160 hour deployment period, The City's gap time credit

---

[1] The Defendant has not provided information on the regular schedules of each officer.

5

is 3.67 hours.[2]  The City's gap time credit is equal to 5.0 hours for an officer who works more than 171 hours and is regularly scheduled to a 156 hour deployment period.[3]   In these two examples, the City would have liability if an officer has a total donning and doffing time that exceeds the calculated gap time credit.

12.   The gap time credit can also be expressed in terms of minutes per shift worked.   As mentioned above, a 160 hours schedule will typically consists of 16, 10 hour long shifts and a 156 hour deployment period will consist of 13 shifts of 12 hour long shifts.  For a 160 hour deployment schedule, the gap time credit per shift is equal to 0.2293 hours (3.67 hours/16 shifts) or 13.76 minutes (.2293 hours x 60 minutes) per shift.  For a 156 hour deployment schedule, the gap time credit per shift is equal to 0.3846 hours (5 hours/13 shifts) or 23.08 minutes (0.3846 hours x 60 minutes) per shift.

**Example calculations for Mr. Nunez and Mr. Mejia**

13.   Example calculations for Mr. Nunez and Mr. Mejia are shown in Tables 1 and 2, respectively.   These tables show the hours worked in each deployment period for each officer.  Activity codes provided by LAPD are used to calculate the number of hours worked.   Specifically, the hours worked in the deployment period are calculated by summing the hours coded HW, LP, OS, OT, PA, PB, AR, and LD.[4]

---

[2] That is, gap time x over time premium = 11 hour gap time x 1/3 overtime premium = 3.67.

[3] That is, gap time x over time premium = 15 hour gap time x 1/3 overtime premium = 5.00.

[4] Codes AR and LD were not found on the DPS time codes sheet.  These codes were utilized by the defendant's expert.

969

Dated: September 8, 2009

Dwight D. Steward

**Table 1: Hours Worked by Deployment Period for Officer Nunez, October 31, 2003 to June 22, 2009**

| Year | Deployment Period | Hours Worked in Deployment Period | Worked Hours Exceeds FLSA Threshold |
|---|---|---|---|
| 2003 | 11 | 99.4 | No |
| 2003 | 12 | 25.2 | No |
| 2003 | 13 | 182.9 | Yes |
| 2004 | 1 | 139.3 | No |
| 2004 | 2 | 173.5 | Yes |
| 2004 | 3 | 205.8 | Yes |
| 2004 | 4 | 167.1 | No |
| 2004 | 5 | 175.9 | Yes |
| 2004 | 6 | 164.4 | No |
| 2004 | 7 | 177.7 | Yes |
| 2004 | 8 | 84.6 | No |
| 2004 | 9 | 195 | Yes |
| 2004 | 10 | 165 | No |
| 2004 | 11 | 151.5 | No |
| 2004 | 12 | 27.5 | No |
| 2004 | 13 | 156.5 | No |
| 2005 | 1 | 179.4 | Yes |
| 2005 | 2 | 146.9 | No |
| 2005 | 3 | 175.9 | Yes |
| 2005 | 4 | 138.4 | No |
| 2005 | 5 | 156 | No |
| 2005 | 6 | 161 | No |
| 2005 | 7 | 165.5 | No |
| 2005 | 8 | 219.1 | Yes |
| 2005 | 9 | 172.5 | Yes |
| 2005 | 10 | 198 | Yes |
| 2005 | 11 | 211.1 | Yes |
| 2005 | 12 | 81.6 | No |
| 2005 | 13 | 191.5 | Yes |
| 2006 | 1 | 206.7 | Yes |
| 2006 | 2 | 196.3 | Yes |
| 2006 | 3 | 170.1 | No |
| 2006 | 4 | 164.6 | No |
| 2006 | 5 | 185.6 | Yes |
| 2006 | 6 | 187.2 | Yes |
| 2006 | 7 | 175.9 | Yes |
| 2006 | 8 | 189.2 | Yes |

| Year | Deployment Period | Hours Worked in Deployment Period | Worked Hours Exceeds FLSA Threshold |
|------|------|------|------|
| 2006 | 9 | 195.5 | Yes |
| 2006 | 10 | 217.6 | Yes |
| 2006 | 11 | 191.9 | Yes |
| 2006 | 12 | 173.6 | Yes |
| 2006 | 13 | 217.4 | Yes |
| 2007 | 1 | 181.1 | Yes |
| 2007 | 2 | 153.1 | No |
| 2007 | 3 | 204.6 | Yes |
| 2007 | 4 | 179.2 | Yes |
| 2007 | 5 | 179.1 | Yes |
| 2007 | 6 | 168.5 | No |
| 2007 | 7 | 160.7 | No |
| 2007 | 8 | 183.6 | Yes |
| 2007 | 9 | 132.8 | No |
| 2007 | 10 | 157.5 | No |
| 2007 | 11 | 176.1 | Yes |
| 2007 | 12 | 152.5 | No |
| 2007 | 13 | 169.4 | No |
| 2008 | 1 | 191.6 | Yes |
| 2008 | 2 | 181.8 | Yes |
| 2008 | 3 | 184 | Yes |
| 2008 | 4 | 132.7 | No |
| 2008 | 5 | 164.8 | No |
| 2008 | 6 | 143.7 | No |
| 2008 | 7 | 165.1 | No |
| 2008 | 8 | 180.2 | Yes |
| 2008 | 9 | 176.5 | Yes |
| 2008 | 10 | 165.2 | No |
| 2008 | 11 | 171.4 | Yes |
| 2008 | 12 | 173.3 | Yes |
| 2008 | 13 | 148 | No |
| 2009 | 1 | 159.5 | No |
| 2009 | 2 | 155 | No |
| 2009 | 3 | 179.5 | Yes |
| 2009 | 4 | 167.2 | No |
| 2009 | 5 | 166.7 | No |
| 2009 | 6 | 147.2 | No |
| 2009 | 7 | 80 | No |

9

972

**Table 2: Hours Worked by Deployment Period for Officer Mejia, October 31, 2003 to June 22, 2009**

| Year | Deployment Period | Hours Worked in Deployment Period | Worked Hours Exceeds FLSA Threshold |
|------|-------------------|-----------------------------------|-------------------------------------|
| 2003 | 11 | 78.2 | No |
| 2003 | 12 | 141.4 | No |
| 2003 | 13 | 183.1 | Yes |
| 2004 | 1 | 177.7 | Yes |
| 2004 | 2 | 155 | No |
| 2004 | 3 | 214.2 | Yes |
| 2004 | 4 | 168.6 | No |
| 2004 | 5 | 175.9 | Yes |
| 2004 | 6 | 177.3 | Yes |
| 2004 | 7 | 207 | Yes |
| 2004 | 8 | 139 | No |
| 2004 | 9 | 169.3 | No |
| 2004 | 10 | 172.5 | Yes |
| 2004 | 11 | 165.5 | No |
| 2004 | 12 | 128.8 | No |
| 2004 | 13 | 119.5 | No |
| 2005 | 1 | 187.1 | Yes |
| 2005 | 2 | 199.5 | Yes |
| 2005 | 3 | 193.2 | Yes |
| 2005 | 4 | 297 | Yes |
| 2005 | 5 | 216.8 | Yes |
| 2005 | 6 | 207.1 | Yes |
| 2005 | 7 | 199 | Yes |
| 2005 | 8 | 215.4 | Yes |
| 2005 | 9 | 186.1 | Yes |
| 2005 | 10 | 216 | Yes |
| 2005 | 11 | 208.4 | Yes |
| 2005 | 12 | 201.5 | Yes |
| 2005 | 13 | 148.4 | No |
| 2006 | 1 | 176.2 | Yes |
| 2006 | 2 | 216.4 | Yes |
| 2006 | 3 | 206.3 | Yes |
| 2006 | 4 | 194 | Yes |
| 2006 | 5 | 193.8 | Yes |
| 2006 | 6 | 232.4 | Yes |
| 2006 | 7 | 236.4 | Yes |
| 2006 | 8 | 216.3 | Yes |

10

| Year | Deployment Period | Hours Worked in Deployment Period | Worked Hours Exceeds FLSA Threshold |
|------|------|------|------|
| 2006 | 9 | 226.9 | Yes |
| 2006 | 10 | 185 | Yes |
| 2006 | 11 | 212.3 | Yes |
| 2006 | 12 | 173.3 | Yes |
| 2006 | 13 | 159.3 | No |
| 2007 | 1 | 209.1 | Yes |
| 2007 | 2 | 180.3 | Yes |
| 2007 | 3 | 202.2 | Yes |
| 2007 | 4 | 175.1 | Yes |
| 2007 | 5 | 172.6 | Yes |
| 2007 | 6 | 182.5 | Yes |
| 2007 | 7 | 171.2 | Yes |
| 2007 | 8 | 208 | Yes |
| 2007 | 9 | 193 | Yes |
| 2007 | 10 | 175.2 | Yes |
| 2007 | 11 | 170.5 | No |
| 2007 | 12 | 153.6 | No |
| 2007 | 13 | 171.7 | Yes |
| 2008 | 1 | 144.5 | No |
| 2008 | 2 | 168.5 | No |
| 2008 | 3 | 204.2 | Yes |
| 2008 | 4 | 210.4 | Yes |
| 2008 | 5 | 197 | Yes |
| 2008 | 6 | 196.6 | Yes |
| 2008 | 7 | 212.2 | Yes |
| 2008 | 8 | 143.4 | No |
| 2008 | 9 | 195.9 | Yes |
| 2008 | 10 | 215.5 | Yes |
| 2008 | 11 | 185.9 | Yes |
| 2008 | 12 | 200.8 | Yes |
| 2008 | 13 | 112.8 | No |
| 2009 | 1 | 203.7 | Yes |
| 2009 | 2 | 188.2 | Yes |
| 2009 | 3 | 242.5 | Yes |
| 2009 | 4 | 211.8 | Yes |
| 2009 | 5 | 222.5 | Yes |
| 2009 | 6 | 231 | Yes |
| 2009 | 7 | 100.5 | No |

11

**Exhibit A: Documents**

| Num. | Description |
|------|-------------|
| 1 | Defendant City of Los Angeles's Memorandum of Points and Authorities Supporting Motion for Partial Summary Judgment |
| 2 | Complaint |
| 3 | DPS Time Codes |
| 4 | LAPD Deployment Periods |
| 5 | Activity Code Table |
| 6 | Declaration of Delores Conway In Support of Defendant City of Los Angeles's Motion for Partial Summary Judgment |
| 7 | 29 U.S.C.A. § 207 |
| 8 | Exhibit 10-B |
| 9 | Exhibit 72 through 82 |
| 10 | Payroll Files |

975

# Employ**Stats**

Economic & Statistical Research
Employment | Wage & Hour | Damages | Police Conduct



**Dwight Steward, Ph.D.**
Economist and Statistician

Dr. Dwight Steward is an expert in statistical and economic analysis of labor and employment related issues. He has experience in consulting and litigation involving employment discrimination and wage and hour matters —on behalf of both defendants and plaintiffs.

Dr. Steward has also developed and implemented innovative methodologies to assist attorneys in the assessment of economic damages in cases involving death or catastrophic injury. As an expert witness, he has authored hundreds of expert reports, been deposed in over 130 cases and testified in over 40 trials. He has also testified in hearings, arbitrations, city council meetings, and before the Texas state legislature.

Dr. Steward writes regularly on employment related issues and frequently speaks to economic and legal professional groups. Dr. Steward's research on the statistical analysis of police racial profiling has received national attention.

In addition, Dr. Steward previously taught in the Department of Economics and the Red McCombs School of Business as the University of Texas at Austin and at Sam Houston State University. He taught numerous courses in economics, statistics, and corporate finance and was voted the teacher of the year by UT's largest business and professional organization.

## EDUCATION

Ph.D., Economics, University of Iowa

B.A., Economics, University of Texas at Austin; earned U.S. Army Officer Commission – Field Artillery

## SELECTED WRITINGS AND PRESENTATIONS

Employment Discrimination and Wage and Hour Analysis Sessions Chairperson, Western Economic Association International Meetings, Seattle, Washington, 2007

Labor and Employment Law CLE Conference, Speaker, University of Texas Law School, Austin, Texas, 2008

Labor and Employment CLE, Speaker, Defense Research Institute (DRI), Chicago, Illinois, 2005

"Evaluating the Statistical and Economic Significance of Statistical Evidence in Employment Discrimination Cases, Expert Evidence Report, BNA, Inc. Vol. 5, No. 5; p. 117-119; 2005

"Back Pay and Front Pay Calculations in Employment Termination Cases: Accounting for Re-Employment and Mitigation Efforts" (Joint with Stephanie Botello), 2008, Available at Social Science Research Network: http://ssrn.com/abstract=1218642

"Lies, Damn Lies, and Statistics: A View from a Statistical Expert", Texas State Bar Advanced Employment Law CLE Chapter 13.1, 2003

*Expert witness testimony list, full listing of speaking engagements, and writings available on request*

976

**Expert witness testimony list**

Howard Hopkins  et al, vs The First American Corporation And First American Real
Estate Tax Service, In The United States District Court Of Texas, Fort Worth Division,
deposition testimony June 2009

Billy Ray Tratree vs. B.P. Pipelines, Inc., Kelley Gleason and Roy Bowden, in the United
States District Court for the Southern District of Texas, deposition testimony June 2009

Kent Schmidt, vs. KMS Retail-Ben White, LPKMS Retail Euless, LA, Kent Stainback,
d/b/a The Stainback Organization, Pete Becerra, Jimmy Evans Company, Ltd., In The
District Court, 345th Judicial District, Travis  County, Texas, deposition testimony May
2009

Juan Manual Lopez-Verduzco, vs. CTNA, et al Arizona Superior Court, County Of
Maricopa, deposition testimony April 2009

James J. Byerlotzer v.Key Energy Services, Inc., In The District Court Of Harris County,
Texas 55Th Judicial District, deposition testimony March 2009

David Liszt and Karen Liszt v. Richard B. Stovall, MD.; Luis Mignucci, MD., Individually
and d/b/a Luis Mignucci, MD., P.A., and d/b/a NeuroSpine Surgical Consultants; and
Medical Center of Plano; In the 219' District Court of Collin County, Texas, deposition
testimony March 2009

Marie Popek, Individually and on Behalf of Those Similarly Situated, vs. AlliedBarton
Security Services LLC, a Delaware Limited Liability Company; AlliedBarton Security
Services LP, a Delaware Limited Partnership; and DOES 1 through 30, inclusive,
Superior Court of the State of California for the County of San Francisco, CA., deposition
testimony December 2008

Charles Heath Leiber vs. IE Miller Service L.P., IE Miller-Fowler L.L.C.,  and Noah
Charles Lawson, In the  District Court 12th Judicial District of Grimes County, Texas,
deposition testimony November 2008

Billy Ray Tratree vs. B.P. Pipelines, Inc., Kelley Gleason and Roy Bowden, in the United
States District Court for the Southern District of Texas, deposition testimony November
2008

Doris H. Gray, a married woman, vs. MOTOROLA, INC., a Delaware Corporation, In the
Superior Court in and for Maricopa County in the State of Arizona, deposition testimony
November 2008

Esteban Barron vs. Larry Paul Hatter, Jr., And Estes Express Lines d/b/a Estes Express
Lines, Inc., In The District Court, 146Th Judicial District, Bell County, Texas, deposition
testimony October, 2008

UNIVAR USA, Inc., vs. Stacey B. Blanton, In The District Court Harris County, Texas
61st  Judicial District, deposition testimony August 2008

Pedro Gonzalez  vs. City Of San Antonio, Acting By And  Through It's Agent, City Public Service Board d/b/a CPS Energy, In The District Court 225th Judicial District Bexar County, trial testimony, San Antonio, Texas, August 2008

Al Scott, Individually And As Administrator Of The Estate Of Dottie Scott, Deceased, And Susan Scott And Sherri Scott  Vs. Sandip V.Mathur, M.D. And Abilene Regional Medical Center In The 42nd Judicial District Court of Taylor County Texas, deposition testimony, April 2008

International Association Of    Firefighters, LOCAL 629 AFL-CIO, et al vs. City Of Monroe, in the United States District Court, Western District Of Louisiana, Monroe Division, deposition testimony, March 2008

Jennifer Jarmon and, Cassius Jarmon, Individually and as Co-Administrators of the estate of Cassidy Jarmon, Deceased, and as Next Friends to Callie Jarmon, a minor child vs. Delbert J. Davison, Old American County Mutual, Prine Towing and Recovery, Inc. COPART, Inc., and DaimlerChrysler Corporation,  In the District Court, 412th Judicial District, Johnson County, Texas,  deposition testimony, February 2008

Veronica Ramirez Aguilar, Individually, as representative of the estate of Mario Islas Minero, and on behalf of all wrongful death beneficiaries vs. Heart Employee Leasing, Inc. D/B/A and Heart HR, and S and D Plumbing- Taylor LLC, In the District Court of Travis County, Texas, 353rd Judicial District, deposition testimony, January 2008

Rolando Garcia vs. Design Werks, Inc., In the District Court of Travis County, 98th Judicial District, deposition testimony, January 2008

Wilford Vogt, James P. Gauthier, and Humberto Reyna, Jr., for themselves and all others similarly-situated United States District Court, for the Northern District Of Texas Dallas, Dallas Division vs. Texas Instruments Incorporated, deposition testimony, November 2007

Randall Barnett, In The District Court, 353RD Judicial District vs. City Of Austin, Powell Austin Properties, Ltd., Powell Holdings, Inc., Makota, Inc., And Alejandro Herrera, Travis County, Texas, deposition testimony November 2007

Cynthia S. Escamilla vs. United Services Automobile Association, a Reciprocal, and Michael Barry, arbitration November 2, 2007

Cynthia S. Escamilla vs. United Services Automobile Association, a Reciprocal, and Michael Barry, deposition testimony October 8, 2007

Jesus F. Diaz, Individually, as next friend of Marco A. Montoya and Racquel A. Diaz, minors and as dependent Co-Administrator of the Estate of Maria E. Diaz; James L. Caldwell, as dependent Co-Administrator of the Estate of Maria E. Diaz; Alejandro E. Diaz' and Isidora Gonzales vs. General Motors Company, Autonation USA d/b/a Champion Chevrolet, H. E. Butt Grocery Company and Gilbert E. Delgado III in the Probate Court, Travis County Texas, deposition testimony August 7, 2007

Angela Kay Warden, and husband, Brent Warden vs. Wendell B. Ashby, MD, In The 108th District Court, Potter County, Texas, trial testimony May 23, 2007

Angela Kay Warden, and husband, Brent Warden vs. Wendell B. Ashby, MD, In The 108th District Court, Potter County, Texas, deposition testimony May 15, 2007

Case No. CIV-06-CV-0308 BB, William Montano and Doris Lucero vs. Christmas By Krebs Corp., In The United States District Court For The District Of New Mexico, deposition testimony March 13, 2007

No. 05-04497-D; Daniel J. Davis, III and Yvonne Davis vs. Worthy Warnack, M.D., Britt T. Daniel, M.D. and Margaret Hollar, D.O.; In the District Court Dallas County, Texas 95th Judicial District, deposition testimony February 13, 2007

Civil Action No. H-04-3575; Julian James, Individually, Daphne Bates Harrison, et al. vs. Harris County Sheriff's Department, et al, In the United States Court for the Southern District of Texas, Houston Division, trial testimony January 2007

Sheila K. Robinson, Plaintiff, in the District Court of Brazos County, Texas vs. Texas A&M University, Defendant in the 85th Judicial District, College Station, Texas, trial testimony Jan. 11, 2007

Viridiana Mata, Individually and Alejandro Rodriguez Individually, and all on Behalf of Genoveva Rodriguez, a Minor v.Mission Hospital and Heather A. Daley, M.D. 370th Judicial District in the District Court of Hidalgo County, Texas, deposition testimony December 2006

Civil Action No. H-03-954; Billy Ray Tratree v. B.P. Pipelines, Inc.; In the United States District Court for the Southern District of Texas Houston Division, trial testimony October 27, 2006

Civil Action No. H-04-3576; Julian James, Individually; Daphne Bates Harrison, Individually, et al. v. Harris County Sheriff's Department and William Wilkinson; In the United States District Court for the Southern District of Texas Houston Division, deposition October 17, 2006

Texas Health and Human Services Commission, Medicaid and other Health and Human Services Fraud and Abuse Program Integrity - Legal Action Relating to Dr. Turner Lewis, M.D., administrative hearing September 26, 2006

Civil Action No. H-03-954; *Billy Ray Tratree v. B.P. Pipelines, Inc.;* In the United States District Court for the Southern District of Texas Houston Division, trial testimony August 2006

Civil Action No. H-04-3576; Julian James, Individually, Daphne Bates Harrison, et al. vs. Harris County Sheriff's Department, et al, In the United States Court for the Southern District of Texas, Houston Division, deposition March 2006

Michael Gibson v. Ondeo Nalco Energy Services, Inc. and Ondeo Nalco Company In the United States District Court for the Southern District of Texas, Houston Division, trial testimony February 2006

Frederick L. Risker vs. Mahnaz Naveed Shah, M.D., Kelsey –Seybold Medical Group, P.A., and Gramercy Surgery Center, Ltd. D/B/A Gramercy Outpatient Surgery Center, deposition November 2005

Larry Butler and Cathy Butler, Individually and on Behalf of Brittany Butler, a minor, and Erin Ferguson v. Kyle Kennedy, Russell Kennedy, Randi K. Kennedy, and Dana Harris, deposition September 2005

Amy Adkins v. Futurion Associates, Inc., deposition August 2005

Cheryl Smith, Individually and as Guardian and Next Friend of Michelle Smith, an Incapacitated Person vs. Reyna Jean Noble, Ross Road Boring, Co., and Bobby L. Lambright, and Mark Huber, Individually and on Behalf of Jessica Huber, A Minor vs Ross Road Boring, Co., and Bobby L. Lambright, deposition and trial August 2005

Jennifer Passi, Individually and dn/f of Gracelyn Ann and Grant Michael Passi, Minor Children and
as Representative of the Estate ofMichael Vincent Passi, deceased v. Dr. Emery W. Dilling and Dr. Staton L. Awtrey; In Travis County, Texas, deposition 8/10/2005

Tanya Valdez, as next friend of Alejandro Ruben Pando, a minor and Lelia Alvarez, Individually and as representative of the estate of Ruben Pando,Jr., deceased vs. Brinker Texas, L.P. D/B/A On The Border Mexican Grill & Cantina, Brinker Chili's Texas,Inc. D/B/A On The Border Mexican Café, Brinker International, Inc, Chili's Beverage Company, Inc., and Marlene Muniz as independent administratrix and personal representative of the estate of Felipe Ornelas, Jr., deposition 2005

Vanessa Sineguare, Individually and as a Representative of the Estate of Darnell Eugene Sineguare vs. Bally Total Fitness Corporation, et al; In the 334th Judicial District Court, Harris County, TX, deposition and trial, 2005

Jerry L. Bigelow, Individually and as Next Friend of B.B., J.N.B., J.T.B. and S.B., Minors v. Living Picture AG, Living Picture Ltd., Living Picture GmbH and New York Lighter Co., Inc.; U.S. District Court, Western District of Texas, Austin Division, deposition, 2005

Suresh Dutta vs. David Pistenmaa, In the United States District Court for the Northern District of Texas, Dallas Division, deposition and trial, 2005

Carrie Bennett, Individually as Representative of the Estate of Roy Edward Bennett, Deceased, and as Next Friend of Lane Edward Bennett, Cody Lee Bennett and April Anne Bennett vs. Stephens Martin Paving, LP, Mobile Products, Inc. D/B/A Lay-Mor ; In the District Court, Taylor County, Texas, 42nd Judicial District, deposition, 2005

Robert Edwin Wills vs. Sysco Food Services of Austin, L.P. and Rickey Charles Green In the 82nd Judicial District Court of Robertson County, Texas, deposition, 2005

Michael Gibson v. Ondeo Nalco Energy Services, Inc. and Ondeo Nalco Company; In the United States District Court for the Southern District of Texas, Houston Division, deposition, 2005

Regina Kelly, et al. v. John Paschall et al.; In the United States District Court for the Western District of Texas; Waco Division, two depositions, 2004 and 2005

Charles White vs. Technip USA Corporation and Technip, Inc.; In the 11th Judicial District Court of Harris County, Texas, deposition, 2005

Mike Arismendez and Elva Arismendez v. Covenant Health Systems d/b/a Covenant Medical Center; In the 237th District Court of Lubbock County, Texas, deposition, 2005

Linda Webb, Individually and on behalf of others similarly situated, v. Barnes Group Inc States District Court, Northern District of Texas, Dallas Division; Consolidated Case No. 3-02CV2716-Rm class certification, 2004

Margia Blankenship, et al. v. Marathon Oil, In the District Court of Harris County 281st Judicial District, class certification, 2004

Margia Blankenship, et al. v. Marathon Oil, In the District Court of Harris County 281st Judicial District, deposition,2004

Sylvia Garcia and Rachel Garcia, Individually and on Behalf of the Estate of Richard Garcia, Deceased vs. Ted L. Phipps, M.D. and The Lubbock Digestive Disease Associates, P.A. and Covenant Health Systems d/b/a Covenant Medical Center In The 237th District Court of Lubbock County, Texas, deposition, 2004

Janet Herdman, et al. v. El Paso Energy Corporation et al.;In the District Court of Harris County, Texas 234 Judicial District, deposition, 2004

Benavides vs. Cushman et al, In the District Court of Harris County, Texas; 280th Judicial District, trial, 2004

Jason Malone v. D.R. Horton – Emerald, Ltd.; In the 129th Judicial District Court of Harris County, Texas, deposition, 2003

Donald Castleberry and Mary Castleberry v. R. Douglas Mills, M.D., Nurse Jane Doe, St. David's Healthcare System, L.P. d/b/a North Austin Medical Center and Capital Emergency Associates; In The 353rd Judicial District Court of Travis County, Texas, deposition, 2003

Hammer Trucking, Inc. v. St. Paul Fire and Marine Insurance Company, et al.; In the 271st Judicial District Court of Wise County, Texas, deposition, 2003

Rodney Wayne Hurt, M.D. v. Southwest Lincoln Mercury, deposition, 2003

Juan T. Gonzales v. S & B Engineers and Contractors, Ltd.; In the District Court of Harris County, Texas; 280th Judicial District, deposition, 2003

John McKelvey and Lawanda McKelvey vs. Arctic Pipe Inspection, Inc.; In the 333rd Judicial District Court, Harris County, Texas, deposition, 2003

Gwendolyn Mason v. American Electric Power / Central Power and Light Company, In the United States District Court, Western District, deposition, 2003

Linda Webb, Individually and on behalf of others similarly situated, v. Barnes Group Inc States District Court, Northern District of Texas, Dallas Division; Consolidated Case No. 3-02CV2716-R
deposition, 2003

No. GN 203595; Clawson v. Michael Landess and Covert Ford; In the district court of Travis County, Texas, 345th judicial district, deposition, 2003

Juan T. Gonzales v. S & B Engineers and Contractors, Ltd.; In the District Court of Harris County, Texas; 280th Judicial District, trial, 2003

Benavides vs. Cushman et al, In the District Court of Harris County, Texas; 280th Judicial District, trial, 2003

Gwendolyn Mason v. American Electric Power / Central Power and Light Company, In the United States District Court, Western District, trial, 2003

Mandy De Leon v. Ivan Melendez, M.D et al., In the District Court, Hidalgo County, Texas, 332nd Judicial District, deposition, 2002

Nicole Terry, et al. vs. Qwest Communications, Inc., Santos Ruiz Castillo, and Hertz Equipment Rental, Inc.; In the 82nd District Court of Robertson County, Texas, deposition, 2002

Maria Hilda Rodriguez v. Emerson Electric Co et al., In the United States District Court for the Southern District of Texas, McAllen Division, deposition, 2002

In Re: Ambrocio Suarez, Jr., Deceased; In the Probate Court #2 of Harris County, Texas, deposition, 2002

Robert L. Hunt and Lisa S. Hunt vs. Century 21 Ripley Realty, Robert H. Carroll and Sylvia K. Carroll; in the District Court Williamson County, Texas, 26th Judicial District, deposition, 2002

Marcelyn K. Boone, Individually, and on behalf of similarly situated persons, Plaintiff vs. Union Carbide Corporation, Defendant; United States District Court, Southern District of Texas, Galveston Division, deposition, 2002

Thomas J. Galland v. David L. Winn; In the District Court of Williamson County, Texas, 368th Judicial District, deposition, 2002

Tranquilino C. Munoz v. Newtron, Inc. and John Grant, In the District Court, Jefferson County, Texas 60th Judicial District, deposition, 2002

Kirk Chi v. Dell Computer Corporation; In the United States District Court, Western District of Texas, deposition, 2002

Pablo Reyes v. Glesby Marks Corporation; Atlas Air Conditioning Company, L.P.; Comfort Systems U.S.A., Inc.; Atlas-Accurate Holdings, L.L.C. and John Bolan; In the District Court of Harris County, Texas, 189th Judicial District, deposition, 2002

Gwendolyn Mason v. American Electric Power / Central Power and Light Company; In the Southern District of Texas, Corpus Christi Division, deposition and trial, 2002

Dario Ibarra vs. Pat Haas, d/b/a Patrick Haas Construction and Barton Creek Lakeside, LLC, in the 345th Judicial District Court of Travis County, Texas, Personal Injury, deposition, 2002

Benavides vs. Cushman et al, In the District Court of Harris County, Texas; 280th Judicial District, deposition, 2002

Alcatel USA, Inc. v. Cisco Systems, Inc., In the United States District Court for the Eastern District of Texas, Sherman Division, deposition, 2002

Thomas J. Galland v. David L. Winn; In the District Court of Williamson County, Texas, 368th Judicial District, trial, 2002

Mandy De Leon v. Ivan Melendez, M.D et al., In the District Court, Hidalgo County, Texas, 332nd Judicial District, trial, 2002

Juanita Fletcher v. City of Houston, In the 189th Judicial District Court, Harris County, Texas, trial, 2002

Keith Ferrell and Tracey Ware v Robert Robinson and the City of Houston, In the County Civil Court at Law Number One, Harris County, Texas, deposition, 2001

Barbara LaRoche v. Daughters of Charity Health Services of Austin, et. al., In the 126th Judicial District Court of Travis County, Texas deposition, 2001

Brandenburg v. Georgetown Independent School District, United States District Court, Western District of Texas, trial, 2001

EEOC v. BP Amoco et al., In the United States District Court for the Southern District of Texas, Houston Division, deposition, 2000

Gomez v. United Parcel Service, United States District Court, Western District of Texas, deposition, 2000

Pineda v. The City of Houston, In the United States District Court for the Southern District of Texas, Houston Division, deposition, 2000

McDonald v. Dr. Sophia Burns, M.D., 268th District Court Fort Bend County, Texas, deposition, 2000

Michelle Toussaint v. Sonic Restaurant, In the 136th District Court of Jefferson County, Texas, deposition, 2000

Woolf v. Vincent, M.D., 9th District Court, Polk County Texas, deposition, 2000

Cause No. 105,494-Isaac Robinson as Next Friend of Chasity Amanda Robinson, Arizona Jackson and Earlean Murray, as Executrix of the Estate of Ruby McDonald vs. Dr. Sophia Burns, M.D. – 268th District Court – Fort Bend County, Texas deposition, 2000

Olen Lovell III v. Texas Health Resources, Herman Methodist System, Arbitration Cause No. 1310010565, Dallas, Texas, Arbitration, 1999

Walker et. al. v. Facility Insurance Corporation, et. al., In the District Court of Travis County, Texas 98th Judicial District, deposition, 1999

Milton Santiago v. American Airlines, Inc., In the 191st Judicial District Court, Dallas County, Texas, deposition, 1999

Brown. v. Sysco, Inc., United States District Court, Western District of Texas, deposition, 1999

Walker et. al. v. Facility Insurance Corporation, et. al., In the District Court of Travis County, Texas 98th Judicial District, Robinson/Daubert hearing testimony, hearing, 1999

Mato v. Dr. Jack Baldauf, et.al, United States District Court, Western District of Texas, Austin, trial, 1999

Goode v. City of Austin and Fine Host Corp, United States District Court, Western District of Texas, deposition, 1998

Chambers v. Texas A&M et al., United States District Court, Western District of Texas, deposition, 1998

Chambers v. Texas A&M et al., United States District Court, Western District of Texas, trial, 1998

**INVITED PRESENTATIONS AND PUBLIC SPEAKING ENGAGEMENTS**

UTCLE  The 15th Annual Labor and Employment Law Conference, Austin, Texas,  May 29-30, 2008

NAACP 71st Texas Annual meeting, "Police Use of Force and Racial Profiling Panel Discussion" McAllen, Texas, October 12, 2007

Western Economic Association International, Chairperson of Employment Discrimination and Wage and Hour Analysis Sessions, Seattle, Washington, June 29 – July 1, 2007

UT School of Law 14th Annual Employment Law CLE, Presented with Stephanie Botello, "Calculating, proving, and mitigating damages involving re-employment", Austin, Texas, May 17, 2007

Iowa Economic Alumni Workshop, Tippie College of Business, "How Long do Mexican Migrants Work in the U.S.?", Iowa City, Iowa, April 21, 1007

Trialsmith CLE webinar series, "Calculating economic damages in injury and death cases", February 8, 2007

American Economic Association Annual *Meeting*, Session Chairperson, "Economic issues in estimating damages in commercial and personal injury cases", Chicago, Illinois, January 6, 2007

MADD National Diversity Forum II, speaker for "Profiling to Behavior" a moderated panel discussion, Dallas, Texas, May 16 – 18, 2006

Academy of Economics and Finance meeting, presented "Valuing employee stock options grants in litigation", Houston Texas, February 10, 2006

American Economic Association annual meeting, presented "Estimating the work life expectancy of undocumented Mexican migrant workers", Boston, Massachusetts, January 2006

DRI 2005 annual meeting, speaker for employment law "Lies, Damn Lies, and Employment Statistics, Chicago, Illinois, October 21, 2005

Labor and Employment Roundtable, sponsored by Texas Lawyer, August 31, 2005

Austin Business District Roundtable, 'Economic Roundtable on the Future of the Austin and Texas Economy, July, 2005

Iowa Alumni Workshop, Department of Economics, Tippie College of Business: "Economics and economists in the U.S. legal system: A view from the trenches", University of Iowa, April, 2005

Police Executive Research Forum: "Data Analysis Guidelines for Poststop Analyses", Las Vegas and Kansas City; 2004

Texas State Capitol Media Press Conference –Study Release, Topic: "An Examination of Consent Searches and Contraband Hit Rates at Texas Traffic Stops", Austin, Texas, 2005

Police Executive Research Forum, Racial Profiling Meeting: Denominator Conference, *"Use of census data to measure racial disparities in traffic stops"*, Las Vegas, Nevada, 2004

Rev: 6/10/2008 4:08:00 PM                    Presentations                    Dwight Steward, Ph.D.

1

Austin City Council Meeting, West University Area Rezoning, "Rezoning Austin's West Campus, A Unique Opportunity for Smart Growth, Austin, Texas, 2004

African-American Economic Legislative Forum, Host by Rep. Senfronia Thompson, Roundtable Speaker, Texas State Capital, Austin, Texas, 2004

North Texas Police Racial Profiling Conference, The University of Texas at Arlington, Center for Mexican American Studies, "The 2002 Racial Profiling Data Revisited: A Look to the Future", Arlington, Texas 2004

NAACP and LULAC Police-Community Town Hall Meeting, "A Look at Police Racial Profiling Statistics in Fort Worth, Fort Worth, Texas, 2004

NAACP and LULAC Police-Community Town Hall Meeting, "A Look at Police Racial Profiling Statistics in Beaumont, Beaumont, Texas, 2004

NAACP and LULAC Police-Community Town Hall Meeting, "A Look at Police Racial Profiling Statistics in Houston, Houston, Texas, 2004

Texas State Capitol, Sen. Royce West Legislative Roundtable of Police Racial Profiling Data Collection and SB 1074, Roundtable Speaker, Austin, Texas, 2004

Police-Community Relation Forum, "A Preliminary Look at Racial Profiling in Texas and the Huntsville Area", Huntsville, Texas, 2003

Economic Issues in the African-American Forum, "The Roots of African-American Economic Progress", Radio Program, KAZI, Austin, Texas 2003

Texas State Bar Advanced Employment Law CLE Seminar Topic: "Lies, Damn Lies, and Statistics", Houston, Texas, 2003

Haynes and Boones, LLP, Presentation, Topic: "Use and [Misuse] of economics in economic damage calculations", Austin, Texas, 2002

Texas Police Chief Forum on Racial Profiling, "Using Search Data and Stop Data to Measure Racial Profiling", University of Texas at Austin, Austin, Texas, 2002

Texas State Capitol Press Conference –Study Release, Topic: "Selecting racially balanced Texas Juries", Austin, Texas, 2003

Texas State Capitol, Press Conference-Study Release, Topic: "Cost savings and efficiency in the Texas State Criminal Justice System", Austin, Texas, 2003

PowerCenter, Presentation, Topic: "Drug treatment programs and cost savings in Texas", Houston, Texas, 2003

Texas State Senate Chambers, Presentation, Topic: *"Statistical analysis of police racial profiling data",* Austin, Texas 2001

This Week with Senator West, Television show, Roundtable Discussion, Topic: *"Detecting racial profiling",* Austin, Texas 2001

Texas State Capitol, Media Press conference, Topic: *"Release of NAACP police racial profiling study"*, Austin, Texas, 2000

College of Business Administration, Sam Houston State University; Huntsville, Texas, Presentation, Topic: *"Lending discrimination",* Huntsville, Texas 1998

Federal Reserve Bank of Chicago; Moderator, Topic: *"Detecting Lending Discrimination in Credit Markets",* Chicago, Illinois, 1997

Federal Reserve Board., Presentation, Topic: *"Bank mergers and managerial",* Washington D.C, 1995

Rev: 6/10/2008 4:08:00 PM                    Presentations                    Dwight Steward, Ph.D.

2

### PUBLIC TECHNICAL REPORTS, PUBLICATIONS AND WORKING PAPERS

"Back Pay and Front Pay Calculations in Employment Termination Cases: Accounting for Re-Employment and Mitigation Efforts" (Joint with Stephanie Botello), 2008, Available at Social Science Research Network: http://ssrn.com/abstract=1218642

Economic Damages Primer for Attorneys: The building blocks for valuing economic damages in personal injury, wrongful death, medical malpractice, and products liability cases, (Joint with Charles Mahla, Ph.D., Michael Sadler, Ph.D., Chad Shirley, Ph.D., Doug Berg, Ph.D., et al.), Econ One Research, Inc., September 2007

"How Long do Mexican Migrants Work in the U.S.?" (Joint with Amy Raub and Jeannie Elliott), Journal of Forensic Economics, Volume XIX No. 2

"Evaluating the Statistical and Economic Significance of Statistical Evidence in Employment Discrimination Cases, Expert Evidence Report, The Bureau of National Affairs, Inc. Vol. 5, No. 5; p. 117-119; March 7, 2005 and March 23, 2005

"Racial Differences in Interest Rates", Midwestern Business and Economic Review, p. 9 – 24, Number 34 Fall 2004

"Lies, Damn Lies, and Statistics: A View from a Statistical Expert", Texas State Bar Advanced Employment Law CLE Chapter 13.1, 2003

"Evaluating Statistical Evidence in Employment Discrimination Cases, Expert Evidence Report, Bureau of National Affairs, p. 117-119.

"An Examination of Consent Searches and Contraband Hit Rates at Texas Traffic Stops", (Co-Authored) Technical Report Prepared for NAACP, LULAC, and Texas Criminal Justice Reform Coalition 2005

"Racial Profiling: Texas Traffic Stops and Searches; A first look at the nation's most comprehensive racial profiling dataset", (Co-Authored) Technical Report Prepared for NAACP, LULAC, and Texas Criminal Justice Reform Coalition, 2004

"Re-Zoning Austin's West Campus: A Unique Opportunity for Smart Growth", Technical Report Prepared for the University Area Partners, 2004

"Drug Treatment Programs and Cost Savings in the Texas State Criminal Justice System", Technical Report Prepared for Justice Policy Institute and NAACP Voter Fund, 2003

"A Statistical Methodology to Help Courts Select Racially Balanced Texas Juries", Technical Report Prepared for the NAACP, 2003

"A re-examination of police racial profiling using the Becker model of discrimination", co-authors Doug Berg and John Maroney , Working paper, 2002

"A Fixed-Effects Discrete Choice Model of Racial Profiling in Police Vehicle Searches", Working Paper, 2002

"A Preliminary Examination of Racial Profiling in Texas: A look at Police Search Rates in Texas", (Co-Authored), Technical Report Prepared for the NAACP, 2000

"A Note: Bootstrap Standard Errors and Confidence Intervals for Weak Axiom of Cost Minimization (WACM) Based Managerial Efficiency Estimates", Published Applied Economics Letters V.2., 1998

"Bank Mergers and Cost Efficiency", PHD Dissertation, University of Iowa, 1995

 "Racial differences in interest rates: a cluster analysis approach", co-authors Doug Berg and Donald Bumpass (SHSU) (2002), Paper accepted for presentation at Economics and Finance Association February 2003 meeting in Savannah, Georgia.

Papers and writings. -- Dwight Steward, Ph.D.